## THE HENRY B. HYDE

MONTAGUE et al. v. THE HENRY B. HYDE.

(District Court, N. D. California. August 31, 1897.)

No. 11,088.

1. CARRIERS OF GOODS—CONTRACT OF CARRIAGE—BILL OF LADING.
   A bill of lading, when signed by the carrier, and delivered to and accepted by the shipper without objection, in the absence of fraud, constitutes the contract of carriage, and binds the shipper, though not signed by him.

2. SAME—STIPULATIONS STAMPED ON BILL OF LADING.
   Stipulations stamped on the face of a bill of lading before its delivery to the shipper, and by express terms included therein, become a part of the contract.

3. SAME—SPECIAL CONTRACT LIMITING LIABILITY.
   In the absence of statutory provision to the contrary, a carrier of goods may, by special contract, contained in the bill of lading, stipulate for a more limited liability than that which the law would otherwise impose upon him.

4. SAME—CONSTRUCTION OF BILL OF LADING—PLACE OF CONTRACT.
   A contract made in New York for the carriage of goods from there to a point in another state is governed by the laws of New York unless a different intention clearly appears.

5. SAME—PRESUMPTION AS TO LAW OF ANOTHER STATE.
   Where the contract evidenced by a bill of lading is to be construed and enforced in accordance with the law of another state, where it was made, and there is no evidence as to the statutes of such state, the presumption is that the general commercial law governing bills of lading is there in force.

C. M. Jennings, for libelants.

Andros & Frank, for respondent.

DE HAVEN, District Judge.    Libel to recover damages alleged to have been sustained by the breakage of certain articles of hardware shipped at the port of New York on board the ship Henry B. Hyde, to be thence carried by said ship and delivered to the libelants at the port of San Francisco.    The evidence shows that the articles of merchandise referred to in the libel were received on board the ship at New York in good order, and were broken before the ship delivered the same to the libelants at San Francisco.    The several bills of lading under which the merchandise was shipped each contained the following stipulations, plainly stamped upon the face thereof:

"Weight, contents, and value unknown.    Not accountable for leakage, rust, or breakage.    Deliverable within reach of vessel's tackles.    If the consignees neglect or refuse to receive their goods for twenty-four hours after being notified of their being ready for delivery, the same will be landed and stored for account and at the risk and expense of whom it may concern; the vessel having a lien upon the goods for amount of freight charges and expenses."

In addition to the foregoing, there was also stamped upon its face, in still larger letters, in the space just above the signature of the person signing the bill of lading for the ship, the words, "Stamped Clauses Included."    Neither of the bills of lading was signed by the shipper, but all of them were signed in behalf of the carrier as follows:  "For the Captain, W. A. Robinson, Atty.,"—and were delivered to and accepted by the shippers, and introduced by the libel-

ants as part of the evidence in this case, the libelants giving notice, however, at the time of so offering them in evidence, that they contested the validity and binding force of the stipulations above set out and stamped upon the face of such bills; and whether such stipulations are binding upon the libelants is the principal question involved in the decision of this case.

The libelants do not dispute the general proposition that a carrier may, by special contract with the shipper, exempt himself from the liability imposed by the general rule of law which makes common carriers insurers of goods intrusted to them against all loss or damage not occasioned by the act of God or the public enemy; but they insist that, as they did not sign the bills of lading under which their goods were shipped, they are not bound by the special stipulations contained therein, and which are above set out; and in support of this contention reliance is placed on the case of Brittan v. Barnaby, 21 How. 527, and section 2176 of the Civil Code of this state. I do not think the opinion in Brittan v. Barnaby, when considered as a whole, and with reference to the particular question before the court in that case, can be deemed authority for the proposition contended for by the libelants. The question before the court in that case was in relation to the effect to be given an unsigned memorandum stamped on the back of the bill of lading, not referred to upon its face, and in the absence of proof that the shipper ever assented to it as a modification of the contract appearing upon the face of the bill of lading. Upon such state of facts the court there held, and properly, that such unsigned memorandum constituted no part of the contract of carriage; and that is all that was decided upon that point. It is true, the court, in the course of its opinion, after stating that the carrier may enter into particular engagements with the shipper, and that such stipulations are not uncommon between shipowners and shippers in charter parties and in bills of lading, proceeded to say:

"But, when done in either, they must be made in words sufficiently intelligible to indicate an agreement that the operation of the law merchant in respect to those instruments is not to prevail; and the stipulation must be in writing, and be signed by the parties, before it can be received as an auxiliary to explain how the contract is to be performed."

But, when the foregoing quotation is read in connection with its context, it becomes apparent that the expression relied upon by the libelants here, to the effect that bills of lading containing such stipulations must be signed by all the parties before such stipulations can be given effect as a part of the contract of carriage, was inadvertently used. A bill of lading is an instrument well known to the commercial law, and according to mercantile usage is signed only by the master of the ship, or other agent of the carrier, and delivered to the shipper. When thus signed and delivered, it constitutes not only a formal acknowledgment of the receipt of the goods therein described, but also the contract for the carriage of such goods, and defines the extent of the obligations assumed by the carrier. The Delaware, 14 Wall. 579. In my opinion, the rule which governs the

point now under consideration is that a common carrier may, by special contract with the shipper, stipulate for a more limited liability than that which he assumes under the ordinary contract for the carriage of goods; and such special contract, in the absence of any statute to the contrary, may be contained in a bill of lading signed by the carrier alone; and the acceptance of such bill of lading by the shipper at the time of the delivery of his goods for shipment, in the absence of fraud on the part of the carrier, is sufficient to show the assent of the shipper to the terms set out in the bill of lading. It is the rule, rather than the exception, for common carriers to stipulate for a release from the stringent liability of an insurer, and which otherwise the law would impose upon them; and according to the customary course of business such stipulations are contained in the bill of lading issued by the carrier. This custom is so general that all persons receiving such bills of lading must be presumed to know of such custom, and they are also charged with the knowledge that it is one of the offices of such instruments to state the terms and conditions upon which the goods therein described are to be carried; and for this reason the acceptance of such a paper by the shipper, without dissent, at the time of the delivery of his goods for shipment, when no fraud or imposition has been practiced upon him, is to be regarded as conclusive evidence that he agrees to be bound by all lawful stipulations contained in such bill of lading, and this I understand to be the rule sustained by the supreme court of the United States in the case of Bank of Kentucky v. Adams Express Co., 93 U. S. 174, and is supported by the following well-considered cases: Kirkland v. Dinsmore, 62 N. Y. 171; Grace v. Adams, 100 Mass. 505; Dorr v. Navigation Co., 11 N. Y. 485; Railroad Co. v. Pontius, 19 Ohio St. 221; McMillan v. Railroad Co., 16 Mich. 79. In the case last cited, Mr. Justice Cooley, speaking for the court, said:

"Bills of lading are signed by the carrier only; and, where a contract is to be signed only by one party, the evidence of assent to its terms by the other party consists usually in his receiving and acting upon it. This is the case with deeds poll, and with various classes of familiar contracts; and the evidence of assent derived from the acceptance of the contract without objection is commonly conclusive. I do not perceive that bills of lading stand upon any different footing."

It follows from what has been said that the stipulations stamped upon the face of the bills of lading under which the goods of the libelants were shipped are to be treated as parts of such bills of lading, and binding upon the libelants, unless this case is governed by section 2176 of the Civil Code of this state, which declares, in substance, that, with the exception of certain stipulations, not involved here, the acceptance by the shipper of a bill of lading or written contract for carriage of his goods, containing modifications of the general liability of the carrier, is not binding upon the shipper unless signed by him. But the contract under consideration here was made in the state of New York, and the rule as declared by the supreme court of the United States in the case of Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469, is that "con-

tracts are to be governed, as to their nature, their validity, and their interpretation, by the law of the place where they were made, unless the contracting parties clearly appear to have had some other law in view." The contract for the carriage of the libelants' goods contemplated that performance thereof should commence in the state of New York, where it was made, and be completed in this state. The fact that its performance was to be completed here is not sufficient to show that the parties thereto intended that such contract should be governed by the law of this state, and not by the law of the place where it was made. The law of the state of New York must, therefore, be looked to for the purpose of determining whether or not the stipulations contained in the bills of lading are binding upon the libelants. There is in this record an entire absence of evidence as to the law of the state of New York on this point. This being so, I think it is the duty of the court to find in accordance with the presumption that the principles of the general or commercial law had not been, at the date of this contract, so changed by the legislature of the state of New York as to require bills of lading to be signed by the shipper as a condition precedent to his being bound by special stipulations therein, limiting the general liability of the carrier. In other words, there is no presumption that the legislature of the state of New York had, prior to the shipment of the libelants' goods, enacted a statute similar to section 2176 of the Civil Code of this state. That there is no presumption that the general commercial law relating to bills of lading has been changed by the legislature of the state of New York, see Murphy v. Collins, 121 Mass. 6; Ellis v. Maxson, 19 Mich. 186; Whitford v. Railroad Co., 23 N. Y. 465. See, also, what was said by the court in Forbes v. Scannell, 13 Cal. 278, and Norris v. Harris, 15 Cal. 252. It may be that the later decisions of the supreme court of the state of California, commencing with the case of Brown v. Gas-Light Co., 58 Cal. 426, announce the contrary rule, to the effect that in every case in which there is an absence of proof to the contrary the law of another country or state will be presumed to be the same as that of the forum. In my opinion, however, the cases first cited state the correct rule; and in admiralty cases this court is not bound to follow decisions of the highest court of this state upon questions relating to the general law of evidence, and this is such a question, relating, as it does, to the presumption by which the court shall be governed in its determination of the fact whether the libelants gave their assent to all the stipulations contained in the bills of lading accepted by them. The question as to the effect of the delivery and acceptance of the bills of lading under the circumstances disclosed here is, therefore, to be determined by the general rules of law concerning the formation of contracts, and the formalities necessary to be observed by the parties to manifest their assent thereto; and it necessarily follows from what has been said that the stipulations stamped upon the bills of lading are binding upon the libelants, and, the goods having been damaged by one of the causes for which, by such special agreement, the carrier was not to be prima facie liable, the burden of proof was upon the libelants to show that the breakage

was the result of the carrier's negligence. Clark v. Barnwell, 12 How. 272; The Invincible, 1 Low. 225, Fed. Cas. No. 7,055. It is sufficient to say, in conclusion, that the evidence fails to show that the breakage was caused by the negligence of the carrier, or any of its agents or servants. Let a decree be entered dismissing the libel, the claimants to recover their costs.