**FARRELL LINES INCORPORATED,
Plaintiff,**

v.

**COLUMBUS CELLO–POLY CORPORATION, Cigna Insurance Company of Europe S.A.–N.V., UMS Generali Marine S.p.A., Reunion Francaise S.A., La Fondiaria Assicurazioni, S.p.A., UTECO S.p.A., and Ceres Terminals Incorporated, Defendants.**

No. 96 Civ. 5250(MBM).

United States District Court,
S.D. New York.

Sept. 15, 1997.

---

Peter A. Junge, Carol N. Lambos, Lambos & Junge, New York City, for plaintiff.

Anthony J. Pruzinsky, Hill Rivkins Loesberg O'Brien Mulroy & Hayden, New York City, for defendants Columbus Cello–Poly Corp., Cigna Insurance Company of Europe S.A.–N.V., UMS Generali Marine S.p.A., La Reunion Francaise S.A., La Fondiaria Assicurazioni, S.p.A., and UTECO, S.p.A.

William J. Manning, Kenny & Stearns, New York City, for defendant Ceres Terminals Inc.

OPINION AND ORDER

MUKASEY, District Judge.

Farrell Lines Inc. sues Columbus Cello–Poly Corp. ("Columbus"), Cigna Insurance Co. of Europe S.A.–N.V. ("Cigna"), UTECO S.p.A. ("UTECO"), UMS Generali Marine S.p.A. ("UMS"), Reunion Francaise S.A. ("Reunion"), La Fondiaria Assicurazioni S.p.A. ("La Fondiaria"), and Ceres Terminals Inc. ("Ceres") for a judgment declaring that: 1) the forum selection clause in the bill of lading governing the cargo at issue which requires suit in this district is enforceable; 2) plaintiff's liability to defendants for damage to cargo transported on one of plaintiff's ships is limited to $500 pursuant to the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C.App. § 1300 *et seq.;* and 3) Ceres, the stevedore that unloaded the cargo from plaintiff's ship, must indemnify plaintiff for any liability plaintiff sustains for damage to the cargo. Plaintiff moves for a partial summary judgment [1] on the first two claims, and for an order enjoining defendants from filing or prosecuting suit relating to the damaged cargo in any other forum, including Italy where suit is now pending.

All defendants, other than Ceres,[2] oppose this motion and move to dismiss for improper use of the declaratory judgment remedy and for lack of an actual controversy, and defendant insurers move to dismiss also for lack of personal jurisdiction. All defendants move also in the alternative to stay this action pending resolution of the Italian action. For the reasons set forth below, defendants' motion to dismiss or stay this action is denied, and plaintiff's motion for a partial summary judgment is granted; further, defendants are enjoined from maintaining any suit relating to damage to the cargo at issue in any other forum.

---

1. Plaintiff does not state the rule pursuant to which it moves, only that it desires the requested relief. Because plaintiff seems to seek judgment as a matter of law, and because plaintiff and defendants have proffered evidence outside the complaint, I will treat this motion as one for summary judgment.

2. Ceres does not oppose the motion. For purposes of this opinion, later references to defendants do not include Ceres.

## I.

The facts material to this motion are essentially undisputed. Farrell Lines is a Delaware corporation with its principal place of business in New York. (Compl.¶ 2)[3] It owns and operates an American-flag merchant vessel named S/S Export Freedom. (*Id.* ¶ 7)

On November 17, 1994, plaintiff issued an ocean bill of lading (the "Bill of Lading") reflecting a shipment aboard the Export Freedom of one flat rack container, no. SCPU 4777037/8, containing one case weighing 25,900 lbs., described as "One Eight–Color Flexographic CI Printing Press" (the "Cargo"). Under the terms of the Bill of Lading, the Cargo was to be transported by ship from Livorno, Italy and discharged at Norfolk, Virginia, with a final destination of Columbus, Ohio. (*Id.* ¶ 8; Lang Decl., Ex. A) The Bill of Lading lists UTECO as "shipper/exporter" and Columbus as "consignee." (Lang Decl., Ex. A) The Bill of Lading states on its face:

IN ACCEPTING THIS BILL OF LADING, the Shipper, Consignee, Holder hereof and Owner of the goods agree to be bound by all of its stipulations, exceptions and conditions, whether written, printed or stamped on the front and back hereof....

(*Id.*) Clause 2 of the Bill of Lading, the "Clause Paramount,"[4] states:

This bill of lading is subject to the provisions of the Carriage of Goods by Sea Act of the United States of America (hereinafter referred to as COGSA) ... and nothing contained herein shall be deemed a surrender by the carrier of its rights of immunities or limitations or an increase of its responsibility or liabilities under COGSA. COGSA, except as specifically provided herein, shall govern before the shipment is

---

3. All citations to "Compl." refer to the Second Amended Complaint filed on April 21, 1997.

4. "The function of the 'Clause Paramount' is to specify the law to be applied to the contract of carriage." 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 10–11, at 51 (2d ed.1994).

loaded on, and after it is discharged from the carrying vessel and throughout the entire time the goods are in the custody of Farrell Lines Incorporated as ocean carrier until delivered. . . .

(*Id.*) COGSA and clause 16 of the Bill of Lading provide that cargo claims are subject to a $500 liability limit per package unless the shipper declares on the bill of lading the nature of the goods and a valuation higher than $500. 46 U.S.C.App. § 1304(5) (1994); *see also* Lang Decl., Ex. A. The space in the Bill of Lading set aside for declaring the value of the shipment is blank. (Lang Decl., Ex. A) Finally, clause 22 of the Bill of Lading provides:

> This bill of lading shall be construed according to the laws of the United States and the shipper, consignee and holder hereof agree that any suits against the Carrier shall be brought in the United States District Court for the Southern District of New York.

(*Id.*)

On December 5, 1994, the Export Freedom arrived in Norfolk, Virginia. The vessel's stevedore, Ceres, off-loaded the Cargo and lashed it to a chassis. (Lang Decl. ¶¶ 8–10) The driver of the chassis made a sharp turn from the pier apron onto the main roadway in the container yard causing the Cargo to tip over and hit the ground. (Lang Decl. ¶ 11; Compl. ¶ 12) The damage to the Cargo has been estimated at approximately $800,000.

The Cargo was insured by a group of four insurance companies: Cigna, the lead insurance underwriter and a Belgian corporation with an office in Italy, insured 50% of the risk; UMS, an Italian corporation, insured 15%; Reunion, a French corporation, insured 10%; and La Fondiaria, an Italian corporation, insured 25%. (Van Knijff Decl. ¶ 5; Compl. ¶ 16) These insurers have paid UTECO under the policy, and are fully subrogated to UTECO's rights. (Compl. ¶ 17; Def. 7/24/97 Mem. at 2) On July 15, 1996, after an exchange of correspondence concerning settlement, plaintiff filed this suit against Columbus, Cigna, UTECO, and Ceres, seeking declaratory and injunctive relief.

On September 4, 1996, the four insurers filed suit in Civil Court in Livorno, Italy, as subrogees of UTECO, against Agenzia Meritima Sesare Fremura S.R.L., "as shipping agent of the vessel 'EXPORT FREEDOM' and/or of the freighter Farrell Lines Incorporated," seeking recovery of damage to the Cargo. (Lang Decl., Ex. K) Plaintiff subsequently provided Cigna with a letter of undertaking for $700,000 in the Italian action after Cigna threatened to arrest its vessel. (Batini Cert. ¶ 2)

Plaintiff then moved for a partial summary judgment declaring that its liability for any damage to the Cargo is limited to $500 pursuant to COGSA, and that any suit regarding damage to the Cargo must be brought in this district. It sought also an injunction prohibiting defendants from proceeding with litigation in any other forum, including Italy. Defendants opposed this motion and moved to dismiss, arguing that there is no actual controversy requiring declaratory relief. In the alternative, defendants requested a stay of this action pending the resolution of the Italian action.

Soon thereafter, I alerted the parties that any injunction issued against defendants relating to the Italian litigation would be futile because three of the plaintiffs in that action—UMS, Reunion, and La Fondiaria—were not parties here. Plaintiff then moved to amend its complaint to add the three other insurers, and I granted plaintiff leave to amend the complaint. *Farrell Lines Inc. v. Columbus Cello–Poly Corp.*, No. 96 Civ. 5250, 1997 WL 189128 (S.D.N.Y. Apr.18, 1997). Plaintiff subsequently added the other three insurers as defendants. Those three defendants, "acting in conjunction with the prior named defendants," move to dismiss the action for lack of personal jurisdiction and for improper use of the declaratory judgment remedy.

## II.

Defendants argue first that this declaratory judgment action must be dismissed because it does not present an actual controversy. Article III of the Constitution limits the jurisdiction of federal courts to actual

cases or controversies. U.S. Const. art. III, § 2. This jurisdictional prerequisite applies to a declaratory judgment action, as Congress recognized when it permitted such an action only "[i]n a case of actual controversy." 28 U.S.C. § 2201 (1994); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). To determine whether a declaratory judgment action presents an actual controversy, a court must examine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *see also Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Further, although a declaratory judgment action may be dismissed in certain situations in a court's discretion, a court must entertain a declaratory judgment action "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Texport Oil Co. v. M/V Amolyntos*, 11 F.3d 361, 366 (2d Cir.1993) (quoting *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir.1969), cert. denied, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970)).

Here, there exists a controversy of sufficient immediacy to warrant a declaratory judgment action. Defendants claim that plaintiff or its agent was negligent in handling the Cargo. They argue that the Hague–Visby Rules, the rules adopted in Italy for determining a carrier's liability for damage to cargo, govern plaintiff's liability and that plaintiff is liable for losses greater than $500. On the other hand, plaintiff claims that COGSA applies and that its liability is limited to $500. This is an actual controversy over plaintiff's liability for damage to the Cargo. Further, this court must entertain this action because a judgment will clarify plaintiff's liability and determine whether COGSA or the Hague–Visby Rules apply. Such a ruling also will end the uncer-

tainty and insecurity giving rise to this proceeding.

Also, there is an additional controversy relating to the validity of the forum selection clause. Defendants claim that the forum selection clause is invalid under Italian law, and accordingly sued plaintiff's agent in Italy after this suit was filed. Plaintiff claims that the forum selection clause is binding and that any suit concerning the Cargo must be brought in this district. Once again, especially in light of the pendency of the Italian action, this is an actual controversy that will be resolved by a declaratory judgment. Such a ruling also will terminate plaintiff's uncertainty as to the validity of the Italian litigation. Accordingly, plaintiff's declaratory judgment action must go forward.

■ Even if I had discretion to dismiss this declaratory judgment action, I would decline to do so. It is true that courts should be dubious of declaratory judgment actions when the plaintiff files suit to interfere with an action already filed or in anticipation of defendant filing suit in another forum. *See, e.g., Columbus Community Cable Access, Inc. v. Luken*, 923 F.Supp. 1026, 1030–31 (S.D.Ohio 1996); *State Farm Fire and Cas. Co. v. Taylor*, 118 F.R.D. 426, 429–30 (M.D.N.C.1988). However, here, plaintiff filed suit seeking resolution of a real controversy in the forum designated in the Bill of Lading. Even if plaintiff filed this action in anticipation of defendant insurers' action in Italy, that would not be improper.

Defendants argue that no controversy exists because they concede that an American court, faced with the questions of whether COGSA applies and whether the forum selection clause is binding, would answer both questions in the affirmative. Moreover, they seem to argue that because they never intended to file suit in this district, there is no controversy necessitating resolution.

■ Defendants misinterpret both the relief that plaintiff seeks and the proper standard for determining whether an actual controversy exists. Plaintiff does not seek an American court's advisory opinion on these two issues. Rather, it seeks a legally binding judgment that COGSA, and not the Hague–

Visby Rules, applies, and that suit must be brought in this district, not in Italy. Defendants' concession regarding the likely rulings of an American court does not moot this controversy. In addition, for an actual controversy to exist, there need not be imminent danger of a suit in a United States court. Rather, there must be a controversy of sufficient immediacy that a ruling on the merits would substantially alleviate uncertainty surrounding the legal issues.

Defendants claim also that plaintiff is improperly using the declaratory judgment remedy to forum shop. This claim has no basis because the forum selection clause in the Bill of Lading requires suit in this district; whether or not that clause is enforceable, a suit in this district is not a manifestation of forum shopping.

■ Finally, defendants argue that plaintiff has an adequate remedy at law in the Italian action. However, even if the Italian action offers an adequate remedy, that does not preclude declaratory relief. Fed.R.Civ.P. 57 ("The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."). "[A] district court has discretion to grant a declaratory judgment on an issue that is pending in another court." *Texport Oil Co.,* 11 F.3d at 365. Defendants' motion to dismiss the declaratory judgment action for lack of an actual controversy or in the exercise of the court's discretion is denied.

### III.

■ Plaintiff moves for a declaratory judgment that the forum selection clause in the Bill of Lading is binding. Defendants claim that the Bill of Lading is unenforceable against them for several reasons. First, they argue that the forum selection clause is not binding upon them because UTECO, the shipper, did not negotiate or sign the Bill of Lading. Second, they claim that even if the forum selection clause is binding on UTECO, its does not bind the defendant insurers because they were not parties to the Bill of Lading and did not consent to its terms. In a related argument, defendant insurers claim that this court lacks personal jurisdiction over them because this allegedly invalid fo-

rum selection clause provides the only basis for jurisdiction. Third, defendants argue that Italian law governs the forum selection clause's enforceability and, under Italian law, the clause is unenforceable.

■ Defendants' first argument—that the forum selection clause does not bind them because UTECO, the shipper, did not negotiate or sign it—does not withstand scrutiny. First, bills of lading are not typically signed by the shipper or holder; rather, only the carrier signs the document and when it is accepted by the shipper, it constitutes a contract of carriage. *See The Henry B. Hyde,* 82 F. 681, 682 (N.D.Cal.1897) ("A bill of lading is an instrument ... [that] is signed only by the master of the ship, or other agent of the carrier, and delivered to the shipper.... [I]t constitutes not only a formal acknowledgement of the receipt of the goods therein described, but also the contract for the carriage of such goods ...."), *aff'd,* 90 F. 114 (9th Cir.1898); 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 10–11, at 44 (2d ed.1994) ("The traditional bill of lading is a document which is signed by the carrier or his agent ....").

■ Second, as noted, the front of the Bill of Lading stated:

IN ACCEPTING THIS BILL OF LADING, the Shipper, Consignee, Holder hereof and Owner of the goods agree to be bound by all of its stipulations, exceptions and conditions, whether written, printed or stamped on the front and back hereof ....

(Pruzinsky Aff., Ex. B) The forum selection clause was one of the conditions printed on the back of the Bill of Lading. In *Carnival Cruise Lines, Inc.* v. *Shute,* 499 U.S. 585, 593–94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the Supreme Court found that a similar statement on the face of a cruise passenger ticket was sufficient to reasonably communicate the existence of the forum selection clause to the passenger and enforced the clause even though the passenger did not sign the ticket or negotiate its terms. *See also Effron v. Sun Line Cruises, Inc.,* 67 F.3d 7, 9 (2d Cir.1995). Further, defendants have filed suit on the Bill of Lading, and thereby accepted its terms. *Mitsui & Co.*

*(USA), Inc.* v. *MIRA M/V,* 111 F.3d 33, 36 (5th Cir.1997) ("[T]he district court did not err in determining that, by filing a lawsuit for damages under the bill of lading, Mitsui has accepted the terms of the bill of lading, including the unnegotiated forum selection clause.").

Third, other courts have enforced forum selection clauses in bills of lading against the owner, shipper or insurer of cargo even though those parties did not sign or negotiate the bills of lading. *See Pasztory* v. *Croatia Line,* 918 F.Supp. 961 (E.D.Va.1996); *Bison Pulp & Paper Ltd.* v. *M/V PERGAMOS,* No. 89 Civ. 1392, 1995 WL 880775, at *14 (S.D.N.Y.Nov.29, 1995); *Blue Ocean Lines* v. *Universal Process Equip., Inc.,* No. 93 Civ. 1722, 1993 WL 403961 at *2 (S.D.N.Y.Oct.7, 1993), *aff'd,* 71 F.3d 405 (2d Cir.1995) (table); *Oman Refinery Co. LLC* v. *MT Bertina,* No. CV 92 3616, 1992 WL 471304, at *2 (C.D.Cal. Sept.25, 1992); *Dukane Fabrics Int'l. Inc.* v. *M.V. "Hreljin",* 600 F.Supp. 202, 203 (S.D.N.Y.1985); *Paterson, Zochonis (U.K.) Ltd.* v. *Compania United Arrow, S.A.,* 493 F.Supp. 626, 629–30 (S.D.N.Y.1980).

▮ Defendants' related argument—that this court lacks personal jurisdiction over the defendant insurers because the forum selection clause does not bind them—also fails. The defendant insurers concede that their claims derive solely from UTECO's subrogation of its rights to them. (Def. 7/24/97 Mem. at 2) It is well-settled that "the subrogee ... stands in the shoes of the subrogor," *Taisho Marine & Fire Ins. Co., Ltd.* v. *M/V Sea–Land Endurance,* 815 F.2d 1270, 1274 (9th Cir.1987) (citations and quotations omitted), and that "any defenses that are valid against the insured are also applicable against the insurer," *Gibbs* v. *Hawaiian Eugenia Corp.,* 966 F.2d 101, 106 (2d Cir. 1992). Because the subrogor, UTECO, is a party to the Bill of Lading and is bound by the forum selection clause, that clause also binds the subrogees to UTECO's rights, the defendant insurers. *See Fireman's Fund American Insurance Companies* v. *Puerto Rican Forwarding Co.,* 492 F.2d 1294, 1295–97 (1st Cir.1974); *National Union Fire Ins. Co.* v. *Pearson,* No. 89 Civ. 2015, 1989 WL 86032 at *3 (S.D.N.Y. July 27, 1989); *see also*

*Spier* v. *Erber,* 759 F.Supp. 1024, 1027 (S.D.N.Y.1991) (subrogee may enforce forum selection clause against party to contract with subrogor when suing to enforce subrogation rights); *cf. Curran Co.* v. *Imedco GmbH,* No. 91 C 7938, 1992 WL 370237 at *3 (N.D.Ill.Dec.3, 1992) (enforcing forum selection clause against assignee of licensing agreement). As a recent case noted: "It is axiomatic that a subrogee stands in the shoes of the subrogor and possesses no greater rights under the contract than the subrogor. ... If Plaintiffs' suit was based on its subrogation rights, Plaintiffs would be bound by the forum selection clause." *Adams* v. *Unione Mediterranea Di Sicurta,* No. 94–1954, 1997 WL 253119 at *2 (E.D.La. May 14, 1997) (citations omitted). Further, if defendants were correct and a party could escape the effect of a forum selection clause by assigning or subrogating its rights, such a clause would serve little purpose, which certainly is not in line with the Supreme Court's view of the importance of such clauses. *See Carnival Cruise Lines,* 499 U.S. at 593–94, 111 S.Ct. 1522; *M/S Bremen* v. *Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

Defendants rely on *Continental Ins. Co.* v. *Washeon Corp.,* 524 F.Supp. 34, 36 (E.D.Mo. 1981), and *Alamo Chemical Transp. Co.* v. *M/V Overseas Valdes,* 469 F.Supp. 203, 212 (E.D.La.1979), to argue that the "right of subrogation is separate and distinct from any bill of lading undertakings," and therefore that the insurers cannot be forced to bring a subrogation action in the United States based on a forum selection clause in the bill of lading. (Def. 4/27/97 Mem. at 6) However, these cases hold that a clause in the bill of lading requiring the shipper/insured to obtain a waiver of subrogation rights from its insurer of which the insurer had no notice does not eliminate the insurer's subrogation rights; rather, such rights may be waived only with the insurer's knowledge and consent. *Continental Ins. Co.,* 524 F.Supp. at 36; *Alamo Chem.,* 469 F.Supp. at 212. Such a rule makes sense because the insurer is not a party to the bill of lading until the insurer becomes subrogated to the insured's rights, and the insured and a third party should not be able to eliminate the insurer's equitable

subrogation rights without the insurer's consent. However, once the insurer becomes subrogated, it steps into the insured's shoes and essentially becomes a party to the bill of lading. Its right of recovery from the carrier of the goods is governed by the same terms as the insured's right of recovery, *i.e.*, by the bill of lading. *See ICC Industries, Inc.* v. *GATX Terminals Corp.*, 690 F.Supp. 1282, 1286 (S.D.N.Y.1988).

■■■ Accordingly, the Bill of Lading's forum selection clause binds the defendant insurers. An enforceable forum selection clause amounts to consent to personal jurisdiction. *See Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *RAR, Inc.* v. *Turner Diesel, Ltd.*, 107 F.3d 1272, 1280 (7th Cir. 1997); *Menorah Ins. Co.* v. *INX Reinsurance Corp.*, 72 F.3d 218, 222 n. 6 (1st Cir. 1995) ("In the commercial context a forum selection clause, even one for arbitration, confers personal jurisdiction on the courts of the chosen forum."). "It is well-settled that jurisdiction by consent satisfies constitutional principles of due process . . . ." *National Union Fire Ins. Co.* v. *Fanelli*, Nos. 89 Civ. 8348, 8400, 1990 WL 134895, at \*3 (S.D.N.Y.Sept.11, 1990) (citing *National Equip. Rental, Ltd.* v. *Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)). Therefore, so long as the forum selection clause is enforceable, this court has personal jurisdiction over defendants and may enter a declaratory judgment against them.

■■■ Defendants' third argument—that the forum selection clause is unenforceable because Italian law, which would not enforce such a clause, applies—also fails. Federal admiralty law determines the validity of the forum selection clause. First, the Supreme Court has applied federal law to evaluate forum selection clauses in maritime contracts. *See Carnival Cruise Lines*, 499 U.S. at 590, 111 S.Ct. 1522; *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. 1907. For example, in *Carnival Cruise Lines*, the Supreme Court stated simply that in admiralty cases, federal law governs the enforceability of forum selection clauses. 499 U.S. at 590, 111 S.Ct. 1522; *see also Dukane Fabrics Int'l. Inc.*, 600 F.Supp. at 203 (applying federal admiralty

law to suit brought to enforce forum selection clause in bill of lading issued by Italian shipper for shipment from Italy to Nigeria). Although it is not entirely clear why the Court applied federal admiralty law, *see Coastal Steel Corp.* v. *Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 201 (3d Cir.1983), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983), one possible explanation is that the Court considers the issue of the enforceability of forum selection clauses to be procedural, rather than substantive, and therefore applies the law of the forum, *i.e.*, federal law. *See Jones* v. *Weibrecht*, 901 F.2d 17, 19 (2d Cir.1990) ("Questions of venue and the enforcement of forum selection clauses are essentially procedural, rather than substantive, in nature."). Whatever the reason for the Court's holding, it binds me, and I must apply federal admiralty law to determine the enforceability of the forum selection clause.

■■■ Second, federal law would apply in determining the enforceability of the forum selection clause even under a choice-of-law analysis. "A federal court sitting in admiralty must apply federal choice of law rules." *State Trading Corp. of India* v. *Assuranceforeningen Skuld*, 921 F.2d 409, 414 (2d Cir.1990); *see also Sundance Cruises Corp.* v. *American Bureau of Shipping*, 7 F.3d 1077, 1080 (2d Cir.1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1399, 128 L.Ed.2d 72 (1994). Under federal choice-of-law rules, when a maritime contract contains a choice-of-law clause, the law chosen by the parties governs, *see Lauritzen* v. *Larsen*, 345 U.S. 571, 588–89, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *State Trading Corp.*, 921 F.2d at 417, "unless (1) that jurisdiction has no substantial relationship to the parties or the transaction or (2) that jurisdiction's law conflicts with the fundamental purposes of maritime law . . . ." *Perzy* v. *Intercargo Corp.*, 827 F.Supp. 1365, 1370 (N.D.Ill.1993); *see also Stoot* v. *Fluor Drilling Services, Inc.*, 851 F.2d 1514, 1517 (5th Cir.1988).

■■■ An ocean bill of lading is a maritime contract between the carrier and the shipper of the goods. *See, e.g., Wemhoener Pressen* v. *Ceres Marine Terminals, Inc.*, 5 F.3d 734, 738 (4th Cir.1993). Here, the Bill of Lading

contains a choice-of-law clause providing that United States law governs its construction. The United States has a substantial relationship to the parties and the transaction: plaintiff is a Delaware corporation with its principal place of business in New York; the vessel was registered in the United States; the Cargo was being shipped to the United States; the recipient of the Cargo and the stevedoring company are United States corporations; and the accident took place in the United States. In addition, the choice of United States law obviously does not conflict with the fundamental purposes of our maritime law. Therefore, United States law should determine the validity of the forum selection clause.

Third, even if defendants are correct that Italian law governs the validity of the forum selection clause, they have failed to demonstrate that Italian law would mandate a result different from United States law. Defendants have not given notice of their intent to raise foreign law issues pursuant to Fed.R.Civ.P. 44.1, nor have they submitted affidavits of experts in Italian law. The certification of their Italian lawyer is insufficient evidence of foreign law because he is not a disinterested expert and has provided little basis for assessing his expertise or weighing his opinions. Absent such evidence, I must assume that Italian law would yield the same result as federal law. *See, e.g., Fabrica De Tejidos La Bellota, S.A.* v. *M/V MAR*, 799 F.Supp. 546, 560–61 (D.VI.1992). Accordingly, federal law applies to determine the enforceability of the forum selection clause.

Under federal law, "[a] forum selection clause is enforceable unless it is shown that to enforce it would be 'unreasonable and unjust' or that some invalidity such as fraud or overreaching is attached to it." *New Moon Shipping Co. v. Man B & W Diesel Ag.*, 121 F.3d 24, 29 (2d Cir.1997); see also *M/S Bremen*, 407 U.S.at 15, 92 S.Ct. 1907. Defendants have failed to meet this standard. There is no evidence of fraud in this arms length, commercial transaction. As noted above, the clause was "reasonably communicated" to defendants. See *Effron*, 67 F.3d at 9. In addition, it would not be unreasonable or unjust for defendants to litigate in New

York, given that New York has a substantial connection to the controversy. Certainly, defendants have not demonstrated that "trial in the contractual forum will be so gravely difficult and inconvenient that [they] will for all practical purposes be deprived of [their] day in court." *M/S Bremen*, 407 U.S. at 18, 92 S.Ct. 1907. Therefore, the forum selection clause is enforceable and suit may be brought in this district only.

## IV.

Plaintiff moves also for a judgment declaring that COGSA applies and that, pursuant to COGSA, its liability for damage to the Cargo is limited to $500. COGSA governs shipments of goods to and from the United States during "the period from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C.App. §§ 1301(e), 1312 (1994). Courts must apply COGSA, when its terms so require, no matter where the bill of lading was issued. *See* 46 U.S.C.App. § 1312 (1994); *see also Dei Dogi Calzature, S.P.A. v. Summa Trading Corp.*, 730 F.Supp. 567, 569 (S.D.N.Y.1990) ("The Court applies United States law because the terms of United States COGSA dictate that that statute govern this bill of lading."); 2A Michael F. Sturley, *Benedict on Admiralty* § 41, at 5–2 (1996) ("[F]or most shipments to the United States, more than one legal regime will be compulsorily applicable.... [United States] courts in this situation, of course, are bound to apply COGSA."); Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 3–19, at 130 (2d ed.1975).

However, here, the damage to the Cargo occurred after discharge. Therefore, I must determine what law governs this period. Here, the Clause Paramount in the Bill of Lading states that COGSA applies to the Cargo before loading and after discharge, *i.e.*, throughout the entire period that plaintiff is in custody of the Cargo. As noted above, there is a substantial relationship between this forum and the parties and transaction. In addition, application of COGSA after discharge would not violate United States public policy. COGSA permits extension of its provisions to the period following

discharge of the cargo. 46 U.S.C.App. § 1307; *see also Toshiba Int'l Corp. v. M/V Sea–Land Express,* 841 F.Supp. 123, 125 (S.D.N.Y.1994) (citing *Colgate Palmolive Co. v. S/S Dart Canada,* 724 F.2d 313, 314 (2d Cir.1983), *cert. denied,* 466 U.S. 963, 104 S.Ct. 2181, 80 L.Ed.2d 562 (1984)). As noted above, the parties' choice-of-law governs as long as that law has a substantial relationship to the parties or transaction and does not violate public policy. *See supra* at 127–28. Therefore, plaintiff's liability for damage to the Cargo is governed by COGSA.

Under COGSA, a carrier's liability is limited to $500 per package, absent a declaration by the shipper of the content of and a higher value for the package. 46 U.S.C.App. § 1304(5) (1994). UTECO did not indicate a higher value for the goods in the Bill of Lading. Defendants admit that the Cargo consisted of only one "package" under COGSA, and that therefore liability under COGSA would be limited to $500. (Pruzinsky Aff. ¶ 10). Accordingly, COGSA applies and plaintiff's liability for damage to the Cargo is limited to $500.

Defendants argue that an Italian court would not enforce COGSA and its liability limitation. Irrespective of what law an Italian court would apply, I must apply COGSA. The Bill of Lading did not incorporate the Hague–Visby Rules, the laws in force in Italy; rather, the owner, shipper and carrier, pursuant to the Bill of Lading, agreed that COGSA would govern, and federal choice-of-law rules require that this choice be enforced.

## V.

■■■ Plaintiff moves to enjoin defendants from bringing or continuing litigation in any other forum. The first issue is whether an injunction may be issued in an admiralty action. The Second Circuit has yet to determine whether the ancient rule that courts sitting in admiralty cannot issue injunctions remains in force. *See China Trade Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 35 (2d Cir.1987). However, several other circuits have abandoned this limitation as a remnant of the historic division among courts of law, equity and admiralty. *See Pino v.*

*Protection Maritime Ins. Co.,* 599 F.2d 10, 14–16 (1st Cir.), *cert. denied,* 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979); *Lewis v. S.S. Baune,* 534 F.2d 1115, 1120–21 (5th Cir.1976); *see also* 1 Steven F. Friedell, *Benedict on Admiralty* § 126, at 8–24 ("[I]t can hardly be denied that in a case properly before it a federal court plainly has the Dower to issue injunctions or to grant other equitable relief." (emphasis in original)); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure,* Jurisdiction 2d, § 3671, at 427–28 (2d ed.1985). Moreover, the Second Circuit has noted that it "may well ·join those circuits when [it is] confronted with an appropriate case." *Eddie S.S. Co. v. P.T. Karana Line,* 739 F.2d 37, 39 (2d Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 568, 83 L.Ed.2d 508 (1984); *see also Buchanan Marine Inc. v. McCormack Sand Co.,* 743 F.Supp. 139, 142–43 (E.D.N.Y.1990). For the reasons discussed below, this appears to be the appropriate case for such a departure.

■■■ "When two sovereigns have concurrent in personam jurisdiction one court will ordinarily not interfere with or try to restrain proceedings before the other." *China Trade,* 837 F.2d at 36. "[P]arallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other." *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir.1984). However, a federal court in the proper situation has the authority to enjoin a party from prosecuting a suit in a foreign jurisdiction even before the domestic action reaches judgment. *China Trade,* 837 F.2d at 35. Principles of international comity require that this power be "used sparingly" and that an injunction be granted "only with care and great restraint." *Id.* at 36 (citations and quotations omitted).

■■■ To determine whether to enjoin a foreign suit, a court must determine, first, whether the parties to both suits are the same, and second, "whether the resolution of the case before the enjoining court would be dispositive of the enjoined action." *Id.* at 36.

If the case meets these two threshold requirements, a court must then consider whether one of five other factors are present:

> (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*American Home Assurance Corp. v. Insurance Corp. of Ireland*, 603 F.Supp. 636, 643 (S.D.N.Y.1984); *see also China Trade*, 837 F.2d at 36. The Second Circuit has held that an injunction may issue only where the first or third factor—the foreign proceeding presents a threat to the public policy or to the jurisdiction of the enjoining forum—is present. *China Trade*, 837 F.2d at 36.

Here, plaintiff meets the two threshold requirements. The four defendant insurers brought the Italian action against plaintiff's Italian agent. All parties to the Italian action are parties to this action. In addition, resolution of this action would be dispositive of the Italian action because that action concerns plaintiff's liability for damage to the Cargo, which I have ruled is limited to $500.

Plaintiff also has met one of the two additional factors required for an injunction: the defendants seek to frustrate two important public policies of this forum through the Italian action. "An anti-suit injunction may ... be appropriate when a party seeks to evade important policies of the forum by litigating before a foreign court." *China Trade*, 837 F.2d at 37; *see also Laker Airways Ltd.*, 731 F.2d at 931 n. 73 ("An impermissible evasion is much more likely to be found when the party attempts to elude compliance with a statute of specific applicability upon which the party seeking an injunction may have relied, and which is designed to effectuate important state policies."); *Mutual Serv. Cas. Ins. Co. v. Frit Indus.*, 805 F.Supp. 919, 924 (M.D.Ala.1992), *aff'd*, 3 F.3d 442 (11th Cir.1993) (table). This case presents the rare situation where defendants concede that they sued in a foreign forum to evade not one, but two important public policies.

First, defendants filed suit in Italy to avoid the United States policy favoring enforcement of forum selection clauses. Defendants' attorney in the Italian proceeding states that "[i]n this case, the Civil Courts in Italy will not force a cargo owner or its subrogee to bring suit only in the United States...." (Batini Cert. ¶ 4) Defendants virtually admit that they sought to circumvent the forum selection clause by bringing suit in Italy. Whether or not defendants are correct about the enforceability of the forum selection clause under Italian law, it is clear that they seek to evade an important public policy. *See, e.g., Carnival Cruise Lines*, 499 U.S. at 493–94; *M/S Bremen*, 407 U.S. at 15, 92 S.Ct. 1907. One court has previously enjoined a foreign suit where that suit was filed in violation of a forum selection clause. *See International Fashion Prods., B.V. v. Calvin Klein, Inc.*, No. 95 Civ. 0982, 1995 WL 92321, at *2 (S.D.N.Y. Mar. 7, 1995) ("[T]he Court finds that the commencement and existence of the Netherlands action [in contravention of the forum selection clause] violates New York public policy.") (citing *M/S Bremen*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513).

Second, defendants filed suit in Italy to avoid the effect of COGSA's liability limitation provisions, which were extended by the Bill of Lading to apply after discharge of the Cargo. According to defendants' attorney in the Italian proceeding, "it is most unlikely that the [Italian] court will apply the COGSA $500/package limitation of liability to the claim involved in this matter." (Batini Cert. ¶ 3) Furthermore, defendants' attorney recommended suit in Italy rather than in the United States (Pruzinsky Aff. ¶ 10), trying to avoid the parties' contractual choice of law. However, COGSA's protections reflect the important policy goal of limiting a carrier's liability when it is not apprised of the true value of goods, so that the carrier does not, in effect, function as the insurer of the goods. Plaintiff relied on the applicability of COGSA in entering this transaction, and its shipping charges reflected this reliance on limited liability. Although it remains unclear whether

defendant is correct about Italian law, it is clear that defendants are attempting to evade the liability limitations that were the bases of their bargain, in violation of public policy.

Although enjoining the parties from proceeding in Italy is justified under this strict standard, a more lenient standard should be applied here because I have decided the merits of plaintiff's declaratory judgment claim. In *Laker Airways,* the D.C. Circuit stated:

> When the injunction is requested after a previous judgment on the merits, there is little interference with the rule favoring parallel proceedings in matters subject to concurrent jurisdiction. Thus, a court may freely protect the integrity of its judgments by preventing their evasion through vexatious or oppressive relitigation.

731 F.2d at 928 (footnotes omitted). The *Laker Airways* Court reasoned that comity considerations are less strong where the domestic court has rendered judgment on the merits because that judgment should be honored by the foreign court under the doctrines of res judicata or collateral estoppel. Accordingly, although it is true that the foreign court should ideally determine whether a judgment in a domestic court precludes the foreign litigation, the standard for enjoining foreign litigation after the domestic court reaches judgment is lower. *See also Mutual Serv. Cas. Ins. Co.,* 805 F.Supp. at 922, n. 3 ("The rule favoring parallel proceedings in matters subject to concurrent jurisdiction applies primarily to requests for injunctions prior to a judgment on the merits. Where one court has already reached a decision, there is less justification for permitting relitigation by another court and a court may act to protect the integrity of its judgment."); *cf.* 28 U.S.C. § 2283 (1994) ("A court of the United States may not grant an injunction to stay proceedings in a State court except ... to protect or effectuate its judgments."). The *Laker Airways* Court stated that after judgment in the domestic litigation, some showing of harassment, bad faith or other equitable circumstance is sufficient to support enjoining the foreign litigation. *See Laker Airways Ltd.,* 731 F.2d at 728 n. 54;

*see also Bethell v. Peace,* 441 F.2d 495, 498 (5th Cir.1971).

Here, plaintiff's request for partial summary judgment on two of its three claims is being granted on the merits; this action is essentially completed. Plaintiff's indemnification claim against Ceres remains unresolved, although this claim appears insignificant in view of my ruling limiting plaintiff's liability to $500. Once a final judgment is entered, which will be done promptly, it will have res judicata or collateral estoppel effect in foreign courts. Therefore, the lower standard for determining whether an anti-suit injunction is appropriate applies. As noted above, defendants have acted in bad faith by bringing suit in Italy to evade COGSA and the Bill of Lading's forum selection clause. Accordingly, defendants will be enjoined from maintaining their Italian lawsuit, or from filing any other lawsuit, concerning damage to the Cargo.

\*　　\*　　\*　　\*　　\*　　\*

For the foregoing reasons, plaintiff's motion for a partial summary judgment is granted and defendants are enjoined from maintaining suit against plaintiff relating to damage to the Cargo in any other jurisdiction. Defendants' motion to dismiss or for a stay is denied.