**HAMILTON BANK, N.A., Plaintiff,**

v.

**KOOKMIN BANK, etc., et ano., Defendants.**

**No. 98 Civ. 2162(LAK).**

United States District Court, S.D. New York.

April 15, 1998.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This matter is before the Court on plaintiff's motion to enjoin defendant Kookmin Bank ("Kookmin") from proceeding with a previously filed action against plaintiff in the courts of the Republic of Korea. As there is no persuasive reason to grant such relief, the motion is denied.

### Facts

On June 11, 1996, plaintiff Hamilton Bank, N.A. ("Hamilton") issued a letter of credit ("L/C") in favor of Sung Jin Trading Co., an exporting firm located in Pusan, Korea, in connection with a transaction in which Sung Jin was to ship 40,000 pairs of sport shoes to the applicant for the L/C, Sky Industries Corporation ("Sky"), for $1.5 million. Hamilton telexed the L/C to Dong Nam Bank, the advising bank, which also is located in Korea. The L/C provided that Hamilton would pay the $1.5 million to Sung Jin upon the presentation of certain documents specified in the L/C evidencing the shipment of the goods.

In due course, Sung Jin presented shipping documents to Kookmin, which determined that they satisfied the L/C and, allegedly in reliance on the L/C, paid $1.5 million less its fee to Sung Jin. Upon presentation of the shipping documents to Hamilton, however, Hamilton refused to reimburse Kookmin. It subsequently claimed that the documents presented did not comply with the L/C.

On or about December 5, 1997, Kookmin sued Hamilton in the District Court of Seoul, Korea. Notice was sent to Hamilton through the Korean consulate in Miami, Florida, the site of Hamilton's main office. The first hearing in that action is scheduled for April 16, 1998.

Hamilton commenced this action against Kookmin and Sky on or about March 25, 1998. The complaint alleges that Hamilton is not subject to personal jurisdiction in Korea and, in consequence, seeks an injunction restraining the prosecution of the Korean action. It seeks also (i) a declaration that it properly refused to pay on the L/C, (ii) in-

Kevin C. Logue, William C. Rand, Paul, Hastings, Janofsky & Walker L.L.P., New York City, for Plaintiff.

Elliot Silverman, McDermott, Will & Emery, New York City, for Defendant.

demnification from Sky if and to the extent that it is liable to Kookmin, and (iii) damages for alleged libel by Kookmin when it faxed a letter to the Comptroller of the Currency claiming that it had been defrauded by Hamilton.

## Discussion

In this Circuit, a movant ordinarily is entitled to a preliminary injunction only if it demonstrates that it is threatened with irreparable injury and either (i) is likely to prevail on the merits, or (ii) has raised serious questions on the merits and the balance of hardships tips decidedly in its favor.[1] Absent proof of threatened irreparable injury, there is no occasion even to address the second part of the analysis.[2] Hamilton argues, however, that the issuance of antisuit injunctions such as that sought here is governed by a different standard. As Hamilton is not entitled to relief under the standard it advocates, the relevance of the traditional standard in these circumstances need not be determined.

■ Hamilton relies upon *American Home Assurance Co. v. Insurance Corp. of Ireland,*[3] which adopted a two part test that later was cited with approval by the Second Circuit in *China Trade and Development v. M.V. Choong Yong.*[4] The first criterion is whether the resolution of the action before the court which is asked to issue an injunction would be dispositive of the action sought to be enjoined. If so, the enjoining court must weigh the following factors to determine if an injunction is justified: whether (1) the prosecution of the foreign action would frustrate a policy of the enjoining forum, (2) the foreign action would be vexatious, (3) the foreign action would threaten the enjoining court's *in rem or quasi in rem* jurisdiction, (4) the proceedings in the foreign forum

would prejudice other equitable considerations, and (5) the adjudication of the same issue in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.[5] In the last analysis, however, the determination whether to issue an anti-suit injunction requires careful consideration of the equities in order "to determine whether … the injunction is required to prevent an irreparable miscarriage of justice," bearing in mind "the fundamental corollary … [that] parallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously" and that antisuit injunctions "are rarely issued." [6]

■ In this case, the threshold test apparently is satisfied in that the determination of this action presumably would be dispositive of Kookmin's action in Korea. But Hamilton does not fare so well on the second branch of the *American Home* standard.

Hamilton's principal argument is that "the Korean action is designed to evade U.S. principles of personal jurisdiction protected by the Due Process clause of the Constitution" and that "[a]llowing the Korean action to continue … would frustrate the United States' policy under the Constitution against personal jurisdiction over defendants who lack minimal contacts with the forum state." [7] In essence, then, Hamilton invites this Court to oust the Korean court of the ability to proceed with a lawsuit duly commenced before it for fear that it would subject Hamilton to personal jurisdiction in circumstances that would be offensive under our principles. The argument is unpersuasive.

To begin with, antisuit injunctions premised on an attempted evasion of the forum's public policies are warranted "only when the strongest equitable factors favor its use." [8] Cases which have granted antisuit injunc-

---

1. *E.g., Jayaraj v. Scappini,* 66 F.3d 36, 38 (2d Cir.1995).

2. *Id.* at 38–39; *Triebwasser & Katz v. American Tel. & Tel. Co.,* 535 F.2d 1356, 1358 (2d Cir. 1976).

3. 603 F.Supp. 636 (S.D.N.Y.1984).

4. 837 F.2d 33, 35 (2d Cir.1987).

5. 603 F.Supp. at 643.

6. *Laker Airways, Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 926–27 (D.C.Cir.1984). Accord, e.g., *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 126 F.3d 365, 371–72 (2d Cir.1997); *China Trade,* 837 F.2d at 35

7. Pl.Br. at 8.

8. *Laker Airways,* 731 F.2d at 931.

tions on such grounds, although far from uniform, typically involve attempted evasion of statutes of specific applicability.[9] While in the proper context, an attempt to circumvent the Due Process Clause requirements for personal jurisdiction might warrant an anti-suit injunction, this is not such a case.

First, there is no evidence from which to infer that Kookmin filed its suit in Korea in an attempt to evade our Constitution's notions of due process.[10] Indeed, Kookmin filed its suit in Korea more than three months before Hamilton brought its suit before this Court.[11]

There is, moreover, no reason to suppose that the Korean court threatens to exercise personal jurisdiction in a way that offends our Due Process Clause. The principles that govern the exercise of personal jurisdiction over foreign defendants by Korean courts are not disputed. Kookmin's expert, a former Senior Judge of the Seoul District Court, Eastern Branch, states that the question "whether a Korean court has jurisdiction over a defendant in an action shall be determined by the principle of *Chori* (i.e., fairness or reasonableness) taking into account the fundamental principles of (1) fairness between the parties to the action, (2) correctness in adjudication of the case, and (3) speediness in the adjudication."[12] In applying that principle against a foreign corpo-

ration, moreover, Korean courts "take into account, among other things, whether the defendant foreign corporation intentionally entered into a transaction with a resident(s) of Korea for economic gain."[13] As these concepts are not dissimilar from those that govern our own due process analysis in such cases,[14] Hamilton's suggestion that an injunction is required in order to prevent an exercise of jurisdiction by the Korean court that would frustrate United States public policy therefore appears to be unfounded. There is every reason to believe that Hamilton's objection to the exercise of personal jurisdiction, which the Court assumes (without deciding) is of some substance, would receive fair consideration by the Korean court under principles consistent with our own.

Nor would Hamilton be without recourse even if its concern as to whether it would waive its jurisdictional objection by appearing to contest jurisdiction is well founded.[15] Hamilton may avoid any such risk by defaulting in Korea and then resisting enforcement of the judgment on the ground that the Korean court lacked personal jurisdiction. "It is clearly established that in order to grant comity to a foreign court's award of a money judgment against a defendant, the foreign court must have obtained valid per-

---

**9.** *Id.* at n. 73. *See, e.g., id.* (granting antisuit injunction for attempted evasion of U.S. antitrust laws); *Farrell Lines, Inc. v. Columbus Cello–Poly Corp.*, No. 96 Civ. 5250(MBM), 1997 WL 570494 (S.D.N.Y. Sept.15, 1997) (enjoining Italian litigation for party's attempt to evade exclusive forum selection clause and limit of liability provision).

**10.** *Compare Farrell Lines*, 1997 WL 570494, at *11 ("This case presents the rare situation where defendants concede that they sued in a foreign forum to evade not one, but two important public policies.").

**11.** *Cf. Seattle Totems Hockey Club, Inc. v. National Hockey League*, 652 F.2d 852, 856 (9th Cir. 1981) (foreign suit filed *twenty seven months* after suit filed in forum); *Farrell Lines*, 1997 WL 570494 (foreign suit filed two months after suit filed in forum); *Timberland Co. v. Sanchez*, 129 F.R.D. 382, 385 (D.D.C.1990) (foreign suit filed one month after suit filed in forum).

**12.** Silverman Decl. Ex. B, ¶ 9.

**13.** *Id.* ¶ 10.

**14.** *See, e.g., World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**15.** Hamilton contends that a Korean court would have discretion to treat a limited appearance made for the purpose of objecting to jurisdiction as a general appearance and require an answer on the merits even in the face of a jurisdictional defense. Rand Decl.Ex. A, ¶ 4. It suggests that it therefore is put to the choice of (a) risking a general appearance by contesting jurisdiction in Korea, and (b) defaulting and taking its chances on a collateral attack on the judgment wherever Kookmin may seek to enforce it. Kookmin, on the other hand, argues that Korean law permits Hamilton to make a limited appearance to contest jurisdiction and that the filing of a motion to dismiss on jurisdictional grounds would not be considered a general appearance. Silverman Decl.Ex. B, ¶¶ 7–8.

sonal jurisdiction over the defendant." [16] Moreover, Florida—the state in which Hamilton is located—specifically provides by statute that a foreign country judgment will not be enforced if the court which rendered the judgment lacked personal jurisdiction.[17]

Finally, it is questionable whether due process principles would be offended even if Korean law permitted Hamilton to contest personal jurisdiction only at the risk of submitting generally to its courts. While all or almost all U.S. states now permit out-of-state defendants to appear specially to contest personal jurisdiction without thereby submitting themselves to the jurisdiction, a few have not always done so. And in *York v. Texas*,[18] the Supreme Court held that the Due Process Clause was not offended by such procedural rules because the defendant would have the right to be heard on the jurisdictional question if any judgment were sought to be enforced. While the continued vitality of *York v. Texas* has been questioned,[19] it remains the law of the land. Even if it were not, it would be far from clear that Korea's adoption of a rule of civil practice in substance the same as that which governed United States proceedings for more than a century would be sufficiently offensive to warrant an anti-suit injunction.

In sum, then, permitting the Korean action to go forward would not prejudice any policy of the United States. Korea's concept of personal jurisdiction is not at substantial variance with our own. And even if Hamilton is right that it could seek to contest jurisdiction in Korea only at the risk of waiving the very defense it wishes to assert, it nevertheless may preserve that defense by defaulting and then defending an action on the judgment by collaterally attacking the jurisdiction of the Korean court when Kookmin seeks to enforce the judgment. One way or the other, Hamilton would have its day in court on the jurisdictional issue.

The remaining *American Home* factors do not favor Hamilton, at least to any material extent. There is nothing vexatious about the Korean action; Kookmin, a Korean bank, quite understandably has sought relief from its own courts just as Hamilton has done here—and Kookmin cannot even be accused of having filed a duplicative lawsuit in its quest for a preferred forum. The Korean action would not interfere with any *in rem* or *quasi in rem* jurisdiction of this Court, as this Court has none. No other equitable considerations have been suggested. And while a United States forum would be more convenient for Hamilton and, arguably, Sky (which is based in Uruguay), it would be far less so for Kookmin. To be sure, the possibility of a race to judgment is undesirable. But it is not clear that this favors Hamilton, which filed the duplicative action; even assuming that it does, it does not do so sufficiently to overcome the other factors counseling against an injunction.

Taking all these factors into consideration, the Court declines to enjoin the prosecution of an ordinary civil action in the courts of a

16. *Cunard S.S. Co. v. Salen Reefer Services*, 773 F.2d 452, 457 (2d Cir.1985). Hamilton concedes for purposes of this motion that it does not possess any assets outside the United States which could be levied by Kookmin in satisfaction of any judgment obtained in Korea. Tr. 26–27. In order for Kookmin to enforce any judgment obtained in Korea, then, it must demonstrate that the judgment was obtained consistent with the requirements of our Due Process Clause.

17. FLA.STAT.ANN. §§ 55.605(1)(b), 55,606 (West 1998); *see also Chabert v. Bacquie*, 694 So.2d 805, 812 (Fla.App.), *review denied*, 705 So.2d 7 (Fla.1997).

18. 137 U.S. 15, 11 S.Ct. 9, 34 L.Ed. 604 (1890).

19. *Compare McNeal–Edwards Co. v. Frank L. Young Co.*, 42 F.2d 362, 371 (1st Cir.1930), *rev'd without consideration of the point*, 283 U.S. 398, 51 S.Ct. 538, 75 L.Ed. 1140 (1931); David P. Currie, *The Constitution in the Supreme Court: Full Faith and Credit and the Bill of Rights, 1889–1910*, 52 U.CHI.L.REV. 867, 902 n. 141 (1985); Arthur Taylor von Mehren, *Recognition and Enforcement of Sister–State Judgments: Reflections on General Theory and Current Practice in the European Economic Community and the United States*, 81 COLUM.L.REV. 1044, 1060 (1981) (questioning *York v. Texas*), *with Nippon Emo-Trans Co. v. Emo–Trans, Inc.*, 744 F.Supp. 1215, 1220 (E.D.N.Y.1990) ("*York v. Texas* has never been overruled."). *Cf. Brown & Williamson Tobacco Corp. v. Engman*, 527 F.2d 1115 (2d Cir. 1975), *cert. denied*, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976) (no due process violation in subjecting enjoined parties to risk of "severe" penalties prior to judicial determination of correctness of FTC interpretation of consent orders).

friendly nation and major trading partner. Accordingly, plaintiff's motion for a preliminary injunction is denied.

The foregoing constitute the Court's findings of fact and conclusions of law.

SO ORDERED.