**A.P. MOLLER–MAERSK A/S d/b/a Maersk Sealand, Plaintiff,**

v.

**OCEAN EXPRESS MIAMI; Carga Global, Sociedad Anonima; Caniz International Corporation; Caniz Logistica, Sociedad Anonima; and Comercializadora De Calidad, Sociedad Anonima (a.k.a. Quality Print), Defendants.**

**No. 06 Civ. 2778.**

United States District Court, S.D. New York.

Dec. 5, 2008.

Freehill, Hogan & Mahar, LLP, by Eric E. Lench, Esq., William J. Pallas, Esq., New York, NY, for Plaintiff.

*OPINION*

SWEET, District Judge.

A.P. MOLLER MAERSK A/S ("Plaintiff" or "Maersk") has moved for an order (1) for partial summary judgment enforcing the COGSA $500 package limitation defense; and (2) enjoining Comercializadora de Calidad, Sociedad Anonima ("Defendant" or "Quality Print") from proceeding with litigation on the merits relating to the shipment at issue in this case in any forum other than the United States District Court for the Southern District of New York, in accordance with the forum selection clause incorporated in the contract of carriage. For the reasons stated below, Maersk's motion will be granted.

## I. PRIOR PROCEEDINGS

On April 10, 2006, Maersk filed its complaint. On August 22, 2006, Maersk filed an amended complaint and on August 31, 2006, an order of attachment was signed in the amount of $650,000. On April 24, 2007, Maersk filed a Second Amended Complaint ("SAC").

On August 9, 2007, Quality Print moved to vacate the attachment obtained by Maersk and to dismiss the SAC for lack of subject matter jurisdiction and failure to state a claim. That motion was denied on April 25, 2008.

The instant motion was filed May 29, 2008. On June 9, 2008, counsel for Quality

Print moved to withdraw due to Quality Print's failure to pay outstanding attorneys' fees. That motion was granted by this Court's Order of June 13, 2008, and Quality Print was granted twenty days from the date of the Order to engage new counsel and file papers in opposition to the instant motion. The twenty days has expired, and there is no record of Quality Print having engaged counsel or filing opposition papers.

## II. FACTUAL BACKGROUND

In 2005, Quality Print, a Guatemalan corporation, purchased a used Heidelberg SpeedMaster 102–SP & L Series No. 533138 (the "Printing Machinery") from Webster Synge Corporation ("Webster"), an American company based in Miami, Florida. The Printing Machinery was located in Milwaukee, Wisconsin.

Quality Print arranged for the carriage of the Printing Machinery through Caniz International Corp. ("Caniz"), which in turn booked the shipment with Maersk through the freight forwarder Ocean Express Miami ("Ocean Express").

The Printing Machinery was packed for shipping in four containers provided by Maersk identified by the following numbers: (i) Container No. MSKU 8502736; (ii) Container No. TRIU 8932686–0; (iii) Container No. GSTU 2608422 (collectively, the "Guatemala Containers"); and (iv) Container No. MSKU 9065081 (the "New Orleans Container").

The Guatemala Containers were trucked from Milwaukee to Chicago and carried by rail to New Orleans, arriving at the Maersk sea terminal between August 16th and 17th, and loaded on board the M.V. MAERSK FREMANTLE (the "FREMANTLE") for carriage to Guatemala. The New Orleans Container containing the electronic unit that operates the Printing Machinery did not arrive at the New Orleans rail container terminal until August 23, 2005, and was not delivered to the Maersk sea terminal until August 25, 2005. The FREMANTLE had a cargo loading cut-off date of August 22, 2005.

On August 24, 2005, the FREMANTLE set sail from New Orleans to Guatemala with three Guatemala Containers aboard, which were discharged in sound condition at Santo Tomas de Castilla, Guatemala, on August 26, 2005.

On August 29, 2005, Hurricane Katrina made landfall in New Orleans, resulting in severe flooding and damaging the Maersk sea terminal, which subsequently had to discontinue operations for several weeks. The New Orleans Container therefore remained in New Orleans.

By mutual agreement, the New Orleans Container was picked up to permit Quality Print's cargo underwriters to determine the extent of any damage. An initial joint survey took place on November 9, 2005, at the Cajun Distribution facility in Jefferson, Louisiana. The survey did not reveal any obvious damage to the electronic components of the Printing Machinery. The surveyors jointly recommended that the components be assembled with those in the three containers in Guatemala, at which time the press should be run and tested for damage.

On or about October 26, 2005 and October 27, 2005, respectively, Quality Print filed two actions in the Second Maritime Court of Panama (the "Panamanian Actions") for damages incurred for failure to deliver the New Orleans Container to the Port of St. Thomas of Castilla in Guatemala. On October 30, 2006, Quality Print commenced an action in Guatemala relating to the same loss and citing the Booking Note.

The facts of this dispute were laid out in greater detail in *A.P. Moller–Maersk A/S v. Ocean Express Miami*, 550 F.Supp.2d

454 (S.D.N.Y.2008) (the "April 25 Opinion"). Familiarity with that Opinion is assumed.

## III. THE MOTION FOR PARTIAL SUMMARY JUDGMENT IS GRANTED

### A. *Applicable Standard*

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *SCS Commc'ns, Inc. v. Herrick Co.,* 360 F.3d 329, 338 (2d Cir. 2004). The courts do not try issues of fact on a motion for summary judgment, but rather determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." *Rodriguez v. City of New York,* 72 F.3d 1051, 1060–61 (2d Cir.1995). Summary judgment is appropriate where the moving party has shown that "little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Resid. Servs., L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See*

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gibbs–Alfano v. Burton,* 281 F.3d 12, 18 (2d Cir.2002). However, "the non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." *Morris v. Lindau,* 196 F.3d 102, 109 (2d Cir.1999) (quotation omitted).

If an opposition party fails to respond to a motion for summary judgment, "summary judgment should, if appropriate, be entered against the party." Fed.R.Civ.P. 56(e)(2). *See also Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004). However,

> even where a non-moving party fails to respond to a motion for summary judgment, a court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even though no opposing evidentiary matter is presented.

*D.H. Blair & Co., Inc. v. Gottdiener,* 462 F.3d 95, 109–110 (2d Cir.2006) (internal quotations and citations omitted). Thus, even unopposed motions for summary judgment must "fail where the undisputed facts fail to show that the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear Co.,* 373 F.3d at 244.

### B. *Maersk Is Entitled to Partial Summary Judgment*

Maersk has moved for partial summary judgment limiting Quality Print's damages,

if any, to $2,500 pursuant to the $500 package limitation under the United States Carriage of Goods by Sea Act, 46 U.S.C. § 30701 note ("COGSA").

Clause 6 of the Maersk Sealand Bill of Lading (the "Bill of Lading") sets forth the circumstances under which Maersk will be liable for loss or damage during the carriage of goods. The Court has already determined that Quality Print is bound by the Bill of Lading. *See* April 25 Opinion, 550 F.Supp.2d at 462–63; *see also Norfolk S. Ry. Co. v. Kirby,* 543 U.S. 14, 33, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004) (holding that cargo owner's recovery against carrier is limited by liability limitation to which an intermediary and the carrier agree). Section 6.2 states that liability of the carrier when the stage of the carriage during which loss or damage occurred is known shall be determined:

> 6.2(b) in case of shipments to or from the United States of America by the provisions of U.S. COGSA if the loss or damage is known to have occurred during Carriage by sea to or from the USA or during Carriage to or from a container yard or container freight station in or immediately adjacent to the sea terminal at the Port of Loading or of Discharge in ports of the USA . . . .

*See* April 25 Opinion, 550 F.Supp.2d at 458. Maersk has established that the alleged damage to the goods in the New Orleans Container took place under such circumstances. As such, pursuant to section 6.2 of the Bill of Lading, COGSA is applicable. *Id.* at 468.

> Section 4(5) of COGSA provides that
>
> Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

46 U.S.C.A. § 30701 note.

The purpose of the COGSA "package limitation" is to present the shipper "with a choice to accept the liability limitation in exchange for a lower rate for shipping, or to declare a higher value and pay a higher rate." *Starrag v. Maersk, Inc.,* 486 F.3d 607, 612 (9th Cir.2007). Accordingly, "[o]nly by granting shippers a fair opportunity to choose between paying a greater or lesser charge to obtain correspondingly more or less protection for its goods may a carrier limit its liability to an amount less than the loss actually sustained." *Gen. Elec. Co. v. MV Nedlloyd,* 817 F.2d 1022, 1028 (2d Cir.1987). Thus, the COGSA package limitation is inapplicable where the shipper "was never afforded a fair opportunity to comply with s 4(5) of COGSA by declaring the actual value of the goods and inserting it in the bill of lading." *Gen. Elec. Co. v. M.V. Lady Sophie,* 458 F.Supp. 620, 622 (S.D.N.Y.1978); *see also Royal Ins. Co. v. M.V. ACX RUBY,* 97 Civ. 3710(MBM), 1998 WL 524899, at *5 (S.D.N.Y. Aug. 21, 1998) ("Although courts have sometimes inquired into a shipper's degree of sophistication in determining whether it had fair opportunity to declare excess value, they have done so only after the carrier has made a prima facie showing that it had provided notice of the $500 per package limitation and how to avoid it."). The Court of Appeals has held that a bill of lading provides sufficient notice where it incorporates by reference the COGSA limited liability provision and "a space on the

front of the bill of lading provid[es] an opportunity for the declaration of excess value . . . ." *Binladen BSB Landscaping v. M.V. Nedlloyd Rotterdam,* 759 F.2d 1006, 1017 n. 12 (2d Cir.1985); *see also Nippon Fire & Marine Ins. Co. v. M.V. Tourcoing,* 167 F.3d 99, 101 (2d Cir.1999) (language incorporating COGSA's provisions and space for declaring excess value of cargo were sufficient notice of limitation of liability provision and means of avoiding it); *Gen. Elec. Co. v. MV Nedlloyd,* 817 F.2d at 1029 (same). District court cases have not interpreted these requirements formalistically, but rather require a showing that, in some manner, the bill of lading provided notice of the liability limitation and the opportunity to avoid it. *See St. Paul Fire and Marine Ins. v. Thypin Steel Co.,* 95 Civ. 4439(MBM), 1999 WL 639718, at *7 (S.D.N.Y. Aug. 23, 1999) (noting that "the courts in this Circuit have found the fair opportunity notice requirement satisfied by a variety of bill of lading provisions in an array of combinations," and listing cases); *Union Carbide Corp. v. M/V Michele,* 764 F.Supp. 783, 786 (S.D.N.Y.1990) ("We find no indication in [*Gen. Elec. Co. v. MV Nedlloyd* ] that the presence of a space on the front of the bill of lading was the crucial factor in that court's decision. It is more important that the plaintiff knew that COGSA governed the transaction and that the defendant's bill of lading specifically discussed the declaration of excess value . . . .").

▉ Here, the Maersk Bill of Lading clause 7.2 states, in relevant part:

Save as provided in clause 7.3: . . . (b) Where Carriage includes Carriage to, from or through a port in the United States of America and US COGSA applies by virtue of clauses 5.1 or 6.2(b) neither the Carrier nor the Vessel shall in any event be or become liable in an amount exceeding US$500

per Package or customary freight unit.

Clause 7.3 states:

The Merchant agrees and acknowledges that the Carrier has no knowledge of the value of the Goods and higher compensation than that provided for in this bill of lading may be claimed only when, with the consent of the Carrier, the value of the Goods declared by the Shipper upon delivery to the Carrier has been stated in the box marked "Declared Value" on the reverse of this bill of lading and extra freight paid. In that case, the amount of the declared value shall be substituted for the limits laid down in this bill of lading. Any partial loss or damage shall be adjusted pro rata on the basis of such declared value.

These clauses provide sufficient notice of the COGSA limited liability provision and the opportunity to avoid it. This is so notwithstanding the fact that there is no evidence that the Bill of Lading, incorporated by reference in the booking confirmation and available on the internet, was actually sent to Defendants. *See Delphi–Delco Elec. Sys. v. M/V NEDLLOYD EUROPA,* 324 F.Supp.2d 403, 425–26 (S.D.N.Y.2004) (holding that fair opportunity doctrine is satisfied where "the contract of carriage incorporates the terms of a standard form bill of lading that is on file with the Federal Maritime Commission and available both on the internet and at the offices of the carrier and its agents").

The Court must next determine whether Maersk has demonstrated that there were five (or fewer) packages. The term "package" as used in COGSA was left undefined by Congress, which has created significant difficulties for the courts, particularly in light of the development of new methods for preparing and assembling goods for shipment. *See Allied Int'l Am. Eagle*

*Trading Corp. v. S.S. "Yang Ming,"* 672 F.2d 1055, 1064 (2d Cir.1982). First resort in interpreting the term must be to the parties' contract, as set forth in the bill of lading. *Binladen,* 759 F.2d at 1012. Here, clause 1 of the Bill of Lading defines "package" as "where a Container is loaded with more than one package or unit, the packages or other shipping units enumerated on the reverse hereof as packed in such Container and entered in the box on the reverse hereof entitled 'Carrier's 'Receipt' [sic] are each deemed a Package." Because the Bill of Lading was an online document incorporated by reference in the booking confirmation, there are no "shipping units enumerated on the reverse." The definition, though not a model of clarity, seems to indicate that in the absence of such enumeration, each individual unit within a container should be considered a separate "package." The New Orleans Container contained five separate palletized units, or "skids," each containing components of the printing press. *See* Cairns Decl. at ¶ 2. Other than treating the entire container as a "package," there is no sensible alternative construction of the term in the present context, Maersk does not argue that the container was the package, and in any event, ambiguity in a bill of lading, which is a contract of adhesion, must be construed against the issuing carrier. *See Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro,* 775 F.2d 476, 486 (2d Cir.1985). The pallets will therefore be treated as separate "packages" under COGSA.

Maersk is therefore entitled to summary judgment on its Fifth Cause of Action. Maersk's liability for damages related to the New Orleans Container is limited under COGSA § 4(5) to $2,500.

## IV. THE INJUNCTION IS GRANTED

Maersk has also sought an order enjoining Quality Print from continuing its pending actions in Panama and Guatemala as they relate to the merits of this dispute and from filing any further actions in those or any jurisdiction beyond this Court.

### A. *Applicable Standard*

"The power of federal courts to enjoin foreign suits by persons subject to their jurisdiction is well-established." *China Trade and Dev. Corp. v. M.V. Choong Yong,* 837 F.2d 33, 35 (2d Cir.1987); *see also Farrell Lines Inc. v. Ceres Terminals Inc.,* 161 F.3d 115, 117 (2d Cir.1998) (recognizing authority of admiralty courts to issue injunctions, including, in the appropriate cases, anti-suit injunctions). However, "because such an order effectively restricts the jurisdiction of the court of a foreign sovereign, an anti-foreign suit injunction should be 'used sparingly,' and should be granted 'only with care and great restraint.'" *China Trade,* 837 F.2d at 35–36 (quoting *U.S. v. Davis,* 767 F.2d 1025, 1038 (2d Cir.1985) and *Canadian Filters (Harwich) v. Lear–Siegler,* 412 F.2d 577, 578 (1st Cir.1969)).

To determine whether to enjoin foreign litigation, the courts of this Circuit have adopted a two-step analysis. As a threshold matter, (A) the parties must be the same in both matters, and (B) resolution of the case before the enjoining court must be dispositive of the action to be enjoined. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645 (2d Cir.2004); *China Trade,* 837 F.2d at 35.

> When these threshold requirements are met, five factors are suggested in determining whether the foreign action should be enjoined: (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5)

adjudication of the same issue in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*Am. Home Assur. Co. v. Ins. Corp. of Ireland Ltd.,* 603 F.Supp. 636, 643 (S.D.N.Y.1984); *see also China Trade,* 837 F.2d at 35. The Second Circuit has cautioned that, in due regard for the interests of comity, the first and third factors, i.e. "whether the foreign action threatens the jurisdiction of the enjoining forum" and "whether strong public policies of the enjoining forum are threatened by the foreign action" take on "much greater significance." *China Trade,* 837 F.2d at 36.

### B. *Maersk Is Entitled to an Anti-Suit Injunction*

■ Here, the threshold requirements are met. The two Panamanian Actions and the Guatemalan Action both involve the same parties, and the resolution of this action will be dispositive of all three. *See* Decl. of Carlos Fernando Fernandez Garcia ¶¶ 2–10 (Aug. 7, 2007); Decl. of Jose Estuardo Luna ¶¶ 2–5 (Aug. 21, 2007).

Maersk has also satisfied the 5–factor test for an anti-foreign suit injunction. First, the foreign actions threaten an important public policy of the forum and the jurisdiction of this Court. It has already been determined that Quality Print is bound by the forum selection clause in the Bill of Lading. *See* April 25 Opinion, 550 F.Supp.2d at 462–66. That clause provides for exclusive jurisdiction in this Court over any disputes arising under the Maersk Bill of Lading where U.S. COGSA applies. "New York has a well-established public policy of enforcing forum selection agreements." *Int'l Fashion Prods. v. Calvin Klein, Inc.,* 95 Civ. 982(JFK), 1995 WL 92321, at *2 (S.D.N.Y. March 7, 1995) (issuing preliminary injunction enjoining plaintiff from prosecuting a subsequently filed injunction application in the District Court of Amsterdam, the Netherlands, in

light of contract's designation of New York as forum for all disputes); *see also Farrell Lines,* 161 F.3d 115 (affirming issuance of injunction enjoining plaintiff from further pursuing pending litigation in Italy in light of New York forum selection clause). *See generally M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (holding that forum selection clause was valid and should be enforced by the courts absent some compelling reason making enforcement unreasonable). "Indeed, the justification for an anti-suit injunction 'crests' when a party seeks the aid of a foreign proceeding 'in a blatant attempt to evade the rightful authority of the forum court.'" *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.,* 441 F.Supp.2d 552, 563 (S.D.N.Y. 2006) (quoting *Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren,* 361 F.3d 11, 20 (1st Cir.2004)). *See also Software AG, Inc. v. Consist Software Solutions, Inc.,* 08 Civ. 389(CM)(FM), 2008 WL 563449, at *24 (S.D.N.Y. Feb. 21, 2008).

Maersk has also made a compelling showing that the secondary factors weigh in its favor. Specifically, Maersk has demonstrated that the three foreign actions filed by Quality Print have great potential to be vexatious and pose significant risk of delay, inconvenience, expense, inconsistency, and a race to judgment.

The similarity between the facts of the instant case and those of *Farrell Lines* is worthy of note. In *Farrell Lines,* plaintiff issued a bill of lading reflecting shipment of a printing press, which was to be transported by ship from Livorno, Italy, and discharged at Norfolk, Virginia, with a final destination of Columbus, Ohio. *Farrell Lines Inc. v. Columbus Cello–Poly Corp.,* 32 F.Supp.2d 118, 122 (S.D.N.Y.1997). In Norfolk, the vessel's stevedore off-loaded the printing press and lashed it to a chassis. The driver of the chassis made a

sharp turn from the pier apron onto the main roadway in the container yard causing the cargo to tip over and hit the ground. *Id.* at 123. The press was insured by a group of four insurance companies. After an exchange of correspondence, plaintiff brought suit against the insurers, shipper and the stevedore, seeking declaratory and injunctive relief. The insurers then brought suit in Livorno, Italy, seeking recovery of damage to the press. *Id.* Plaintiff moved for partial summary judgment declaring its liability for any damage to the cargo limited to $500 pursuant to COGSA, and seeking an injunction prohibiting defendants from proceeding with litigation in any other forum, including Italy. *Id.*

After holding that the COGSA liability limitation did apply and that the forum selection in the bill of lading was binding on the shipper and its insurers, *see id.* at 125–27, the Honorable Michael B. Mukasey issued the injunction. Judge Mukasey held that it had been shown that defendants sought to frustrate two important public policies of this forum through the Italian action: first, defendants filed suit in Italy to avoid the United States policy favoring enforcement of forum selection clauses, and second, defendants filed suit in Italy to avoid the effect of COGSA's liability limitation provisions. *Id.* at 130. Judge Mukasey's conclusions were based on a defense attorney's certification that admitted these to be the reasons for bringing suit in Italy. *See id.* Judge Mukasey also noted that, although enjoining the parties from proceeding in Italy was justified under this strict standard, a more lenient standard should be applied because he had decided the merits of plaintiff's declaratory judgment claim, and the standard for enjoining foreign litigation after the domestic court reaches judgment is lower. *Id.* at 131. *See also Paramedics Electromedicina,* 369 F.3d at 655 ("[W]here one court has already reached a judgment—on the same issues, involving the same parties—considerations of comity have diminished force."). The Court of Appeals affirmed "[f]or substantially the same reasons as those stated by the district court in its thoughtful and well-reasoned Opinion and Order ...." *Farrell Lines,* 161 F.3d at 116.

There are distinctions between *Farrell Lines* and the instant case. Here, the Panama Actions were filed before the instant action, and there are no express admissions on record that Quality Print brought the Panama and Guatemala Actions in order to defeat public policies of this forum. However, these inconsistencies do not change the ultimate determination that an injunction is necessary to protect the Court's jurisdiction and the public interest in enforcing the forum selection clause. Panama has no significant relationship to this dispute. The shipment did not originate or end there, neither Quality Print nor Maersk reside there, and the alleged damage to the shipment did not occur in Panama. It is simply a choke point through which vessels carrying goods from the United States Gulf to the West Coast of Central and South America must pass. With regard to the explicit admissions in *Farrell Lines,* such admissions are not necessary to demonstrate that Quality Print, by bringing multiple suits outside this District in violation of the forum selection clause, seeks to defy the New York's interest in enforcing the forum selection clause and this Court's jurisdiction.

Accordingly, Quality Print, its agents and underwriters will be enjoined from proceeding with litigation on the merits relating to the shipment at issue in this case in any forum other than the United States District Court for the Southern District of New York, in accordance with the

forum selection clause incorporated in the contract of carriage.

## V. CONCLUSION

For the reasons stated above, Plaintiff's motion for partial summary judgment is granted and Quality Print is enjoined from maintaining suit against Plaintiff related to damage to the shipment at issue in this case in any forum other than the United States District Court for the Southern District of New York.

It is so ordered.