**A.P. MOLLER–MAERSK A/S d/b/a Maersk Sealand, Plaintiff,**

v.

**OCEAN EXPRESS MIAMI; Carga Global, Sociedad Anonima; Caniz International Corporation; Caniz Logistica, Sociedad Anonima; and Comercializadora De Calidad, Sociedad Anonima (a.k.a. Quality Print), Defendants.**

No. 06 Civ. 2778.

United States District Court, S.D. New York.

Aug. 18, 2009.

Freehill, Hogan & Mahar, LLP, by: Eric Einar Lenck, Esq., William Joseph Pallas, III, Esq., New York, NY, for Plaintiff.

Dougherty, Ryan, Giuffra, Zambito & Hession, by: Peter J. Zambito, Esq., New York, NY, for Defendant, Ocean Express Miami.

*OPINION*

SWEET, District Judge.

Plaintiff A.P. MOLLER MAERSK A/S d/b/a MAERSK SEALAND ("Plaintiff" or "Maersk") has moved for summary judgment under Rule 56, Fed.R.Civ.P., and for sanctions against defendant Comercializadora de Calidad Sociedad Anonima ("Defendant" or "Quality Print"). No opposition having been filed, the motion for sanctions is granted, and the motion for summary judgment is granted in part.

## I. PRIOR PROCEEDINGS AND FACTS

The facts as described below have been set forth in Maersk's Rule 56.1 Statement ("Statement"),[1] the affidavits referenced therein, and Maersk's June 30, 2008 Notice to Admit.[2]

The facts relating to the present dispute are summarized here. More detailed descriptions of the circumstances giving rise to this litigation are set forth in the Court's opinions dated April 25, 2008 and December 5, 2008. *See A.P. Moller–Maersk A/S v. Ocean Express Miami,* 550 F.Supp.2d 454 (S.D.N.Y.2008) ("April 25 Opinion"); *A.P. Moller–Maersk A/S v. Ocean Express Miami,* 590 F.Supp.2d 526 (S.D.N.Y.2008) ("December 5 Opinion").

Quality Print was the purchaser, owner, and receiver of a shipment of used printing machinery in four ocean containers being transported from Milwaukee, Wisconsin, to Guatemala City, Guatemala, with ocean carriage from New Orleans to Guatemala. Maersk was the carrier of the shipment based upon a booking agreement dated August 16, 2005. Quality Print had arranged for the carriage with Maersk through freight forwarder Caniz International Corp., who in turn booked the shipment with Maersk through the freight forwarder Ocean Express Miami.

After trucking from Milwaukee to Chicago, the first three containers were carried by rail to New Orleans, transported to the

---

1. Because the Statement is unopposed, the facts as set forth therein are adopted as true for purposes of this motion.

2. Exhibit C to the Affirmation of William J. Pallas in Support of Motions for Summary Judgment and Sanctions ("Pallas Aff."). The Notice is deemed admitted in default of a response. *See* Fed.R.Civ.P. 36(a)(3); *Herrera v. Scully,* 143 F.R.D. 545, 550 (S.D.N.Y.1992) ("Properly stated requests under Fed. R. Civ. p. 36(a) are to be deemed admitted in the absence of a formal response by the opposing party." (quoting *DeLeon v. Ramirez,* 465 F.Supp. 698, 701 (S.D.N.Y.1979))). *See also S.E.C. v. Kaye, Real & Co.,* 122 F.Supp. 639, 640 (S.D.N.Y.1954) (deeming factual statements in an unanswered Request for Admission of Facts admitted in light of defendants' failure to respond); *Moosman v. Blitz,* 358 F.2d 686, 688 (2d Cir.1966) ("[A] failure to respond to a request to admit will permit the District Court to enter summary judgment if the facts as admitted are dispositive.").

Maersk sea terminal and loaded on board the MAERSK FREMANTLE for carriage to Guatemala. Due to rail congestion at Chicago, which may have been compounded by some delay on the part of the shipper with respect to stuffing and delivery, the fourth container, the "New Orleans Container," did not arrive at New Orleans in time to make the sailing cut-off deadline for the MAERSK FREMANTLE.

On August 29, 2005, Hurricane Katrina, one of the worst natural disasters in this country's history, struck New Orleans. The Maersk sea terminal, along with the entire city of New Orleans, sustained extensive damage as a result of Hurricane Katrina and the consequent failure of New Orleans' levy system. As a result, the terminal facility had to discontinue its operations. The New Orleans Container was not carried forward to Guatemala, but instead, pursuant to mutual agreement, was picked up by Quality Print's cargo underwriters in November 2005 to determine the extent of the damage to the press, if any. An initial joint survey took place on November 9, 2005 at the Cajun Distribution facility in Jefferson, Louisiana. The survey of the container revealed that it contained five individually packaged "skids" of printing press components. The surveyors attending did not find any apparent damage to the printing press components, but recommended prompt testing of the printing press after assembly. Despite repeated demands thereafter, Quality Print has not provided Maersk with any information whatsoever as to the condition of the printing press, testing, or efforts to mitigate any damage subsequent to this first joint survey in November 2005.

### The Litigation in Panama and Guatemala

On Friday, October 26, 2005, Quality Print commenced an *in rem* action against Maersk in the Second Maritime Court of Panama, claiming a total loss of the printing machinery carried in the four ocean containers. The claimed damages included not only the full invoice value of the machinery ($550,000.00), but also the replacement cost of the machinery ($1,500,000.00). In addition, the Complaint alleged numerous consequential losses, including loss of earnings, financial expenses, and "moral damages" for a total claim of $8,415,000. Statement ¶ 15. On October 28, 2005, Quality Print filed a second, *in personam* action against Maersk based on the same alleged loss as the *in rem* action. In connection with these proceedings, Quality Print obtained an Order of Arrest for the M/V MAERSK FREMANTLE and the M/V MARGRETHE MAERSK.

To avoid arrest of its vessels in Panama, Maersk posted a $10,000,000 cash bond as security for both claims in Panama. While cargo claimants normally accept the posting of security in the form of a Letter of Undertaking from the vessel's P & I Club ("Club LOU"), Quality Print refused to accept a Club LOU unless Maersk agreed to waive the forum selection clause found in the Bill of Lading/contract of carriage. The forum selection clause, as this Court previously held, requires that any action by Quality Print against Maersk in connection with allegations of damages to the printing press must be brought in the Southern District of New York.

Quality Print then commenced a third action in Guatemala on October 30, 2006, relating to the same shipment of printing machinery. Naming Maersk Guatemala S.A. as the defendant, Quality Print cited the booking confirmation as contractual evidence in support of the claim and stated that the shipping company Maersk Sealand "operates and responds in Guatemala under the trade name of Maersk Guatemala, Sociedad Anonima." Declaration of A. Andrew Tsukamoto ("Tsukamoto

Decl.") at ¶¶ 22–24. The Guatemala action included a petition for the appointment of an intervenor by the court in Guatemala which permitted the physical occupation and oversight of the Maersk office in Guatemala City. The presence of the intervenor was a significant disruption to the operation of the office. Maersk was subsequently successful in having the order for an intervenor rescinded.

Maersk has incurred, and continues to incur, significant legal fees defending the duplicative and parallel lawsuits brought by Quality Print in both Panama and Guatemala and continues to incur significant damage in connection with the cash security which it was forced to post in Panama in order to avoid the arrest of its vessels transiting the Panama Canal.

On May 27, 2009, the Supreme Court of Justice, Ci of Panama, Civil Bench, issued an opinion on Maersk's appeal of the attachment, finding that the majority of the $10 million attachment was unsupported by the evidence and reducing the amount of the arrest to $783,000.00.

### The Instant Action

Maersk filed its complaint on April 10, 2006, its amended complaint on August 22, 2006, and obtained an order of attachment on August 31, 2006, in the amount of $650,000. On April 24, 2007, Maersk filed a Second Amended Complaint ("SAC").

The SAC sought (1) an injunction enforcing the forum selection clause in the contract of carriage; (2) damages arising from the commencement of actions in Panama prohibited by a service contract incorporated in the contract of carriage; (3) damages resulting from abuse of process in the actions in Panama; (4) a declaration that Maersk is not liable for any damage to the printing machinery; (5) enforcement of limitations of liability pursuant to the United States Carriage of Goods by Sea Act ("US COGSA"), Pub.L. 16 No. 74–521, 49 Stat. 1207 (1936) (codified at 46 U.S.C.

§§ 30701 *et seq.*); (6) damages for demurrage, storage, and other charges incurred on the containers; (7) attorneys' fees; and (8) indemnity from freight forwarders.

Quality Print moved to vacate the attachment and to dismiss the SAC for lack of jurisdiction and failure to state a claim. The motion was denied in the April 25 Opinion.

On June 13, 2008, counsel for Quality Print was granted leave to withdraw. Since that time Quality Print has not replaced its New York counsel and has defaulted on all subsequent actions. On June 30, 2008, Maersk served a Notice to Admit on Defendant Quality Print via Federal Express. A copy was likewise served on Quality Print's former attorneys in New York. Quality Print failed to respond to the Notice to Admit, which is therefore regarded as fully admitted. *See* Fed. R.Civ.P. 36(a)(3); *Herrera,* 143 F.R.D. at 550.

On December 5, 2008, in response to Maersk's unopposed motion, the Court enjoined Quality Print from proceeding with litigation on the merits relating to the shipment of the printing press in any forum other than the United States District Court for the Southern District of New York in accordance with the forum selection clause incorporated in the contract of carriage. *See* December 5 Opinion, 590 F.Supp.2d at 533–35. Summary judgment was also granted in favor of Maersk pursuant to COGSA § 4(5) on its fifth cause of action, thereby limiting Maersk's liability for damages relating to the New Orleans Container to $2,500. *Id.* at 532.

Counsel for Maersk sent a copy of the December 5 Opinion by Federal Express and e-mail directly to Quality Print in Guatemala and also to Carreira–Pitti PC Abogados, Quality Print's attorneys in Panama. Service by these means was confirmed as of December 12, 2008. In its

cover letter, Maersk made the following demand:

> In light of the above, Maersk hereby demands that any litigation brought by Comercializadora de Calidad, S.A. (a/k/a Quality Print), its agents and underwriters against Maersk in any jurisdiction outside the United States District Court for the Southern District of New York, including actions presently pending in Panama and Guatemala, be discontinued on the merits without delay. Maersk further demands that the quantum of security obtained by Quality Print in Panama immediately be reduced to U.S. $2,500, plus some reasonable allowance for interest and costs, in accordance with Judge Sweet's holding as to the maximum quantum of recoverable damages under the U.S. COGSA package limitation.

> Please be advised that if Quality Print fails to comply with the above demands within fourteen (14) days, Maersk will apply to the Court in New York for an order holding Quality Print in contempt and imposing monetary sanctions, in addition to attorneys' fees and costs.

Pallas Aff. Exh. A at 2.

Maersk's motion to dismiss and an accompanying motion for contempt sanctions were marked fully submitted on March 4, 2009.

## II. DISCUSSION

The applicable standard for summary judgment is set forth in the December 5 Opinion. *See* December 5 Opinion, 590 F.Supp.2d at 529. Although Maersk's submission is unopposed, the Court must undertaken an examination of the evidence to ensure that it is competent, substantive, avoids speculation, and supports the causes of action presented for summary judgment. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109–10 (2d Cir. 2006) (requiring court to examine submit-ted evidence even if motion for summary judgment is unopposed); *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir.1999).

### A. *Quality Print Has Breached the Contract*

Clause 26 of the Maersk Sealand Bill of Lading provides, in relevant part:

> Whenever clause 6.2(d) and/or whenever U.S. COGSA applies, whether by virtue of Carriage of the Goods to or from the United States of America or otherwise, that stage of the Carriage is to be governed by United States law and the United States Federal Court of the Southern District of New York is to have exclusive jurisdiction to hear all disputes in respect thereof.

*See* Tsukamoto Decl. Exh. B.

This Court has previously held that the forum selection clause contained in the Maersk Bill of Lading applies to the claims brought by Quality Print in Guatemala and Panama. *See* April 25 Opinion, 550 F.Supp.2d at 468 ("Thus, COGSA and the exclusive forum selection clause apply to this dispute."). Quality Print's actions against Maersk in Panama and Guatemala are therefore in direct violation of the forum selection clause contained in the Bill of Lading.

By initiating and pursuing the litigation in Panama and Guatemala, Quality Print has breached the contract with respect to the forum selection clause. Maersk has incurred, and continues to incur, substantial damages relating to the $10 million security it was forced to post to prevent the arrest of its vessels in Panama, as well as substantial attorneys' fees and costs in defending the lawsuits in both Panama and Guatemala.

### B. *The Use of Process by Quality Print Is Abusive*

■ An abuse of process claim under New York law requires a plaintiff to estab-

lish (1) the existence of a regularly issued process, either civil or criminal; (2) an intent to do harm without excuse or justification; and (3) the use of the process in a perverted manner to obtain a collateral objective. *O'Bradovich v. Village of Tuckahoe*, 325 F.Supp.2d 413, 434 (S.D.N.Y. 2004); *New York Stock Exch., Inc. v. Gahary*, 196 F.Supp.2d 401, 415 (S.D.N.Y. 2002). The essence of a claim for abuse of process is the misuse or perversion of regularly issued process to the accomplishment of an improper purpose. *Merrill Lynch Futures, Inc. v. Miller*, 686 F.Supp. 1033, 1043 (S.D.N.Y.1988); *Dean v. Kochendorfer*, 237 N.Y. 384, 390, 143 N.E. 229 (1924). "To show that that regularly issued process was perverted to the accomplishment of an improper purpose is enough" to establish a claim for abuse of process. *Klass v. Frazer*, 290 F.Supp.2d 425 (S.D.N.Y.2003) (quoting *Kochendorfer*, 237 N.Y. at 390, 143 N.E. 229).

*Prosser and Keeton on Torts* describes abuse of process as a "form of extortion" and notes that writs such as "attachment, execution, garnishment, or sequestration proceedings" lend themselves to extortionate use. *Prosser and Keeton on Torts* 899 (W. Page Keeton et al. eds., 5th ed.1984). Prosser and Keeton further states that the ulterior purpose (collateral objective) may be inferred, "from the way the process was carried out, as for example in the case of excessive attachment from which the inference may be drawn that defendant sought extortionate advantage by tying up all the plaintiff's property when attachment of a small amount would provide sufficient security for a debt." *Id.*

While courts have traditionally demonstrated a reluctance to entertain abuse of process claims, the circumstances of Quality Print's attachment in Panama, as set forth in Maersk's unopposed submissions, establish Quality Print's intent to harm and its use of the attachment process for an improper collateral objective. In reaching this conclusion, the Court is guided by the decision of the Supreme Court of Justice of Panama, which examined the evidence submitted by Quality Print in support of its $10 million attachment. In finding the vast majority of the attachment to be entirely without support, the court stated:

> [T]he rest of the evidence presented with the petition for arrest and the claim, fails to support in even the slightest manner the amount claimed of EIGHT MILLION FOUR HUNDRED FIFTEEN THOUSAND AMERICAN DOLLARS (US$8,415,000.00). Under these circumstances, the arrest ordered for NINE MILLION TWO HUNDRED EIGHTY SEVEN THOUSAND FIVE HUNDRED AMERICAN DOLLARS (US$9,287,500.00) far exceeds the amount supported by the circumstantial or initial evidence presented in the claim and petition for arrest.
>
> * * *
>
> [T]he evidence provided circumstantially proves that the amount claimed is SIX HUNDRED SEVENTY EIGHT THOUSAND AMERICAN DOLLARS (US$678,000.00) and not the amount sought by the claimant.

*Comercializadora de Calidad, S.A. v. A.P. Moller–Maersk A/S*, (Pan. May 4, 2009). Quality Print's attachment was therefore found to be based on a claim for damages well over ten times the amount justified by the submitted evidence. Indeed, the nature of the claims brought by Quality Print, and its conduct subsequent to the award of the attachment, support the conclusion that it sought to artificially inflate its claimed damages, and therefore the sum attached, for an improper collateral purpose. For example, despite the clear language of the contract absolving the carrier of any liability for consequential losses

or damages or for loss of profits,[3] Quality Print claimed over $4.7 million for "loss of earnings." Defendant also sought to recover both the invoice value of the machinery ($550,000) as well as the replacement cost of the machinery ($1.5 million), despite the windfall that would result from such a "double recovery."[4] In addition, Defendant sought $1 million for "moral damages," the exact nature of which remains unspecified. Defendants have also failed to identify the nature of the alleged damage to the printing press or even confirm that the printing press has ever been tested.

Finally, the Court notes that Quality Print refused to follow the industry convention of accepting a Club LOU as security for its claim, instead insisting that Maersk provide security in the form of a more expensive cash bond. Quality Print offered to accept a Club LOU only if Maersk agreed to waive the forum selection clause contained in the Bill of Lading.

As the Court has previously held, the forum selection clause is binding upon the parties and forms the basis an anti-suit injunction against Quality Print prohibiting the litigation of the present dispute in any venue other than the courts of the this District.

In light of Quality Print's pursuit of an unjustifiably large attachment, its failure to offer any evidence suggesting that that the printing press was damaged, and its attempt to induce Maersk to litigate this dispute in the forum of Quality Print's choosing, the Court finds, as a matter of law, that Quality Print utilized the attachment proceedings to improperly interfere with Maersk's business or, at the very least, to improperly induce Maersk to relinquish its contractual right to litigate the dispute in the venue contractually agreed upon by the parties.

Because the unopposed facts establish that Quality Print "sought extortionate advantage" by tying up an unjustifiably large

---

**3.** The Bill of Lading provides, in relevant part:

> 8.1 The Carrier does not undertake that the Goods or any documents relating thereto shall arrive or be available at any point or place at any stage during the Carriage or at the Port of Discharge or the Place of Delivery at any particular time or to meet any particular requirement of any license, permission, sale contract, or credit of the Merchant or any market or use of the Goods and the Carrier shall under no circumstances whatsoever and howsoever arising be liable for any direct or indirect or consequential loss or damage caused by delay. If the Carrier shall nevertheless be held legally liable for any such direct or indirect or consequential loss or damage caused by such alleged delay, such liability shall in no event exceed the Freight paid for the Carriage.
> 8.2 Save as is otherwise provided herein, the Carrier shall under no circumstances be liable for direct or indirect or consequential loss or damage arising from any other cause whatsoever or for loss of profits.

Tsukamoto Decl. Exh. B. The Court has previously held that the terms and conditions of the Maersk Bill of Lading are incorporated into the booking note and thus fully applicable to this case. *See* April 25 Opinion, 550 F.Supp.2d at 464. In addition, the above clause has previously been held to be fully enforceable with respect to claims for delay damages. *See Maersk v. American Midwest,* 97 Civ. 0475(NRD), 1998 WL 473945, at *7 n. 6 (S.D.N.Y. Aug. 7, 1998).

**4.** COGSA, the applicable law under the contract of carriage, provides that "[i]n no event shall the carrier be liable for more than the amount of damage actually sustained." 46 U.S.C.App. § 1304(5); *see also Thyssen, Inc. v. S/S Eurounity,* 21 F.3d 533, 540 (2d Cir. 1994) ("Under COGSA, a carrier is not liable for more than the amount of damages actually sustained."); *Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 861 (2d Cir. 1985) ("The correct measure of damages, however, is the amount necessary to put the injured parties in the exact position they would have been in had there been no breach." (citation omitted)).

amount of Maersk's property "when attachment of a small amount would provide sufficient security for a debt," *Prosser and Keeton* at 899, judgment is granted to Maersk with respect to its third cause of action for abuse of process.

### C. *Summary Judgment on Plaintiff's Fourth Cause of Action for Declaratory Judgment Is Granted.*

Maersk's fourth cause of action seeks a declaratory judgment that Maersk is not liable for any damage to the printing press at issue.

■ The Declaratory Judgment Act of 1934 provides that in the event of an actual case or controversy, a court of competent jurisdiction may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought." 28 U.S.C. § 2201. An action for declaratory judgment is ripe when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir.2005). In addition, the Court must determine "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Id.* at 389.

The actions brought by Quality Print in Panama and Guatemala leave little doubt that there exists a substantial and ongoing controversy between the parties over Maersk's liability for alleged damages to

the printing press. Furthermore, granting declaratory judgment to Maersk would serve to resolve Quality Print's claim for damages to the printing press, here, in the proper venue.

■ The Court has previously held that U.S. COGSA governs the present dispute. *See* April 25 Opinion, 550 F.Supp.2d at 468. Section 1304(2)(d) of COGSA expressly exempts carriers from liability for loss or damage arising out of "Acts of God." 46 U.S.C.App. § 1304(2)(d). By virtue of the unanswered Notice to Admit, Quality Print is deemed to have conceded that any damage to the printing press was the result of Hurricane Katrina, which constitutes an Act of God for purposes of COGSA. Notice to Admit ¶ 14. As a result, Maersk is exempt under COGSA from any liability arising out of allegations of damage to the printing press.[5]

Judgment is granted to Maersk with respect to its fourth cause of action for declaratory judgment.

### C. *The Demurrage Claim Presents a Factual Issue*

According to Maersk, Quality Print's failure to arrange for Customs in Guatemala to release the first three containers of printing machinery renders Quality Print liable for demurrage, storage, and/or other applicable charges on the containers totaling $50,000 in accordance with the terms of the Maersk Bill of Lading.

Quality Print has submitted, in connection with its prior motion to dismiss, a declaration from its Director, Carlos Garcia, in which he alleges that Maersk was

---

**5.** As noted *supra,* Quality Print has also failed, after more than three years of litigation in three different countries, to produce any evidence as to the location of the printing press, whether it is presently in use and/or whether it has sustained any damage. In the absence of any proof that the printing press was dam-

aged, Quality Print cannot sustain its prima facie case under COGSA. *See Transatlantic Marine Claims Agency, Inc. v. M/V OOCL Inspiration,* 137 F.3d 94, 98 (2d Cir.1998) (quoting *Vana Trading Co. v. S.S. Mette Skou,* 556 F.2d 100, 104 (2d Cir.1977)).

responsible for Quality Print's failure to take possession of its containers from Customs following their discharge from the MAERSK FREMANTLE. *See* August 29, 2007 Declaration of Carlos Garcia in Further Support of Motion to Dismiss and Motion to Vacate the Order of Maritime Attachment ("Garcia Decl.") ¶¶ 9–15. Garcia concedes that the containers were discharged from the MAERSK FREMANTLE at the Port of Santo Tomas de Castilla on August 28, 2005, and that Quality Print did not make any effort to secure the release of its containers from Customs until some seven months later on March 29, 2006. However, Garcia also claimed that Maersk "refused" to disclose the location of the containers. *Id.* at ¶ 9. Garcia also stated that Maersk was dilatory in providing an original bill of lading, apparently required by Customs, and that it took him from March 29, 2006, to April 18, 2006, to resolve the issue with Maersk.

Maersk, relying on the Tsukamoto Declaration, asserts that it provided its usual and customary arrival notice for the containers. It also argues that Quality Print, by retaining the services of Caniz International, an experienced freight forwarder in Guatemala, could have located the containers at Customs during the ensuing seven months.

■ These dueling affidavits present factual issues which cannot be resolved on this motion for summary judgment. Consequently, Plaintiff's motion for summary judgment with respect to its sixth cause of action is denied.

## D. *Sanctions For Contempt Are Appropriate*

■ "A party may be held in civil contempt for failure to comply with a court order if '(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.'" *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir.2004) (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir.1995)). In order to impose contempt sanctions, "[i]t need not be established that the violation was willful." *Id.* (citing *Donovan v. Sovereign Sec. Ltd.*, 726 F.2d 55, 59 (2d Cir. 1984)).

■ "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics Electromedicina*, 369 F.3d at 657 (citing *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir.1989)); *see also New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir.1989). While the Court has "broad discretion" to affix the amount of a coercive sanction, a sanction imposed for compensatory purposes must bear some relationship to the amount of damages being incurred as a result of the contemnor's violation of the Court's order. *Paramedics Electromedicina*, 369 F.3d at 657–58.

■ Here, sanctions are warranted for both coercive and compensatory purposes, namely, to enforce compliance with the Court's injunction of the foreign proceedings, and to compensate Maersk for the sizable damages which it continues to incur by virtue of Quality Print's refusal to dismiss the actions in Panama and Guatemala.

First, the Court's December 5 Opinion clearly and unambiguously "enjoined [Quality Print] from proceeding with litigation on the merits relating to the shipment at issue in this case in any forum other than the United States District Court for the Southern District of New York, in accordance with the forum selection clause

incorporated in the contract of carriage." *See* December 5 Opinion, 590 F.Supp.2d at 527.

Secondly, Quality Print's noncompliance is "clear and convincing." Maersk served a copy of the Court's December 5 Opinion on Quality Print's offices in Guatemala City by international courier on December 12, 2008, and by email on December 11, 2008. Additionally, Maersk served a copy of the Opinion upon Quality Print's attorneys in Panama by courier on December 12, 2008. As set forth in the declarations of Maersk's attorneys in Panama and Guatemala, Quality Print has taken no action whatsoever in these jurisdictions to comply with the Court's order. Following the withdrawal of its New York counsel, Quality Print has failed to engage new counsel and has chosen to disregard all further proceedings before this Court since losing its initial motion to dismiss.

Finally, the Court has been presented with no evidence that Quality Print has made any attempt to comply with the Court's anti-suit injunction.

In light of the foregoing, Quality Print is found to have committed civil contempt for which sanctions are appropriate.

### E. *Maersk Is Entitled to Attorneys' Fees and Costs*

The Bill of Lading specifically stipulates that the Merchant shall pay attorneys' fees under certain circumstances. Specifically, clause 15.2 provides, in relevant part, that "[t]he Merchant shall be liable for and shall indemnify the Carrier against all loss, damage, delay, fines, attorney fees and/or expenses arising from ... any other cause whatsoever in connection with the Goods for which the Carrier is responsible." Clause 16 further provides that if the Merchant fails to pay the Freight (defined as including "all charges payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading"), the Merchant

"shall be liable also for payment of service fee or interest due on any outstanding sum, reasonable attorney fees and expenses incurred in collecting any sums due to the Carrier." Tsukamoto Decl. Exh. B.

■■■ In addition, Quality Print's conduct in this matter is such that Maersk is entitled to recover its reasonable attorneys' fees and costs in connection with the litigation in Panama and Guatemala on the basis of Defendants' ongoing violation of the Court's anti-suit injunction. As the Supreme Court has observed:

> [T]here are ample grounds for recognizing that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees .... [A] court may assess attorney's fees as a sanction for the willful disobedience of a court order [and] a court's discretion to determine the degree of punishment for contempt permits the court to impose as part of the fine attorney's fees representing the entire cost of litigation.

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal quotations and cites omitted).

In light of the attorneys' fees provisions contained in the Bill of Lading and Quality Print's continued noncompliance with this Court's anti-suit injunction, Maersk is entitled to judgment on its seventh cause of action in the amount of legal fees incurred as a result of the enjoined litigation.

### III. CONCLUSION

Upon the facts and conclusions stated above, the motion of Maersk for summary judgment on its second, third, fourth, and seventh causes of action is granted, and its motion for sanctions based upon Quality Print's civil contempt is granted.

As a result of Quality Print's abuse of process in obtaining grossly excessive se-

curity and its continued civil contempt, Quality Print is assessed damages in the amount of Maersk's interest costs on the $10 million cash bond through May 4, 2009, the date on which the Supreme Court of the Republic of Panama reduced Maersk's cash security to $783,000. Maersk is also entitled to continuing interest costs on the remaining cash bond.

In addition, Maersk is entitled to legal fees, including attorneys' fees and costs, in connection with the enjoined actions in Panama and Guatemala.

It is so ordered.